UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

_____ )
IN RE: )
 )        CHAPTER 11
THG PROPERTIES LLC )        CASE NO. 20-10644-FJB
                      Debtor. )
_____ )

## MOTION FOR RELIEF FROM STAY

To the Honorable Frank J. Bailey, Bankruptcy Judge:

Now comes Avidia Bank (the "Bank"), and hereby represents as follows:

1.      That Avidia Bank is a bank with a usual place of business located at 42 Main Street, Hudson, Massachusetts.

2.      That the debtor, THG Properties LLC (the "Debtor"), is a Massachusetts limited liability company with an address of 386 Commercial Street, Provincetown, Massachusetts.

3.      That on March 5, 2020, the Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts.

4.      The Debtor is indebted to the Bank pursuant to a Promissory Note dated on or about March 31, 2017 in the original principal amount of $1,875,000.00 (the "$1,875,000.00 Note").  A copy of the $1,875,000.00 Note is attached hereto and incorporated herein as Exhibit "A".

5.      The $1,875,000.00 Note is secured by a first mortgage on property located at 386 Commercial Street, Provincetown, Massachusetts (the "Property"), in the original principal amount of $1,875,000.00, given by THG Properties LLC to Avidia Bank

on or about March 31, 2017.  Said Mortgage is recorded at the Barnstable County Registry of Deeds at Book 30390, Page 286 (the "First Mortgage").  A copy of the Mortgage is attached hereto and incorporated herein as Exhibit "B".

6.      The outstanding balance on the $1,875,000.00 Note, as of March 5, 2020, is $1,905,952.46.

7.      The Debtor is indebted to the Bank pursuant to a Promissory Note dated on or about March 31, 2017 in the original principal amount of $1,125,000.00 (the "$1,125,000.00 Note").  A copy of the $1,125,000.00 Note is attached hereto and incorporated herein as Exhibit "C".

8.      The $1,125,000.00 Note is secured by a second mortgage on property located at 386 Commercial Street, Provincetown, Massachusetts (the "Property"), in the original principal amount of $1,125,000.00, given by THG Properties LLC to Avidia Bank on or about March 31, 2017.  Said Mortgage is recorded at the Barnstable County Registry of Deeds at Book 30390, Page 329 (the "Second Mortgage").  A copy of the Second Mortgage is attached hereto and incorporated herein as Exhibit "D".

9.      The outstanding balance on the $1,125,000.00 Note, as of March 5, 2020, is $1,214,912.11.

10.     Avidia Bank is the current holder of the $1,875,000.00 Note, the First Mortgage, the $1,125,000.00 Note and the Second Mortgage previously outlined herein.

11.     The Bank has no other collateral to secure the $1,875,000.00 Note other than the First Mortgage.

12.     The Bank has no other collateral to secure the $1,125,000.00 Note other than the Second Mortgage.

13.     The Debtor is indebted to the Bank pursuant to an Unlimited Guaranty dated on or about May 1, 2017 in the original principal amount of $183,000.00 (the "$183,000.00 Guaranty").  A copy of the $183,000.00 Guaranty is attached hereto and incorporated herein as Exhibit "E".

14.     The $183,000.00 Guaranty is secured by a first position perfected security interest in all assets of Debtor's only tenant, Town Hospitality Group, Inc. (the "Operating Entity Assets").

15.     The Bank has no current valuation on the Operating Entity Assets.

16.     The Debtor is indebted to the Bank pursuant to a Corporate Guaranty dated on or about October 6, 2017 in the original principal amount of $150,000.00 (the "$150,000.00 Guaranty").  A copy of the $150,000.00 Guaranty is attached hereto and incorporated herein as Exhibit "F".

17.     The $150,000.00 Guaranty is secured by a perfected security interest in all of the asses of a non-debtor entity, Kohi Coffee Company LLC (the "Non-Debtor Entity Assets").

18.     The Bank has no current valuation on the Non-Debtor Entity Assets.

19.     There are the following encumbrances on the Property:

| Name of Creditor: | Type of Lien: | Amount Owed: |
| --- | --- | --- |
| Avidia Bank | First Mortgage | $1,884,599.71 |
| Avidia Bank | Second Mortgage | $1,193,634.77 |
| Avidia Bank | Guaranty | $ 149,000.00 |
| U.S. Small Business Association | Guaranty | $ 325,000.00 |

TOTAL ENCUMBRANCES:                                    $3,552,234.48

                                                        (plus legal fees, costs &
                                                        appraisal)

20.     According to the Debtor's schedules, the fair market value of the property, at

the time the Debtor filed its schedules on March 5, 2020, was $5,940,000.00.

21.     The liquidation value of the Property based on that valuation would have

been no greater than $5,583,600.00, which was the Debtor's Scheduled Market Value,

minus 6% for the cost of sale.

22.     Although the Debtor filed its voluntary petition on March 5, 2020, and was

operating at the time, the Commonwealth of Massachusetts declared a state of

emergency due to the COVID-19 pandemic on March 10, 2020.  Also on March 10,

2020, this Court held a hearing on the Debtor's Motion for Use of Cash Collateral.

23.     After limited opposition to the Motion for Use of Cash Collateral and the

March 10, 2020 hearing, a Proposed Order for Use of Cash Collateral was filed on

March 11, 2020 and was allowed on March 11, 2020 (the "March 11, 2020 Cash

Collateral Order").

24.     The March 11, 2020 Cash Collateral Order ordered the Debtor to make

certain cash collateral payments to Avidia in April 2020 and in May 2020 (the "April

2020 Cash Collateral Payment" and the "May 2020 Cash Collateral Payment",

respectively).

25.     On March 23, 2020, the Governor of the Commonwealth of

Massachusetts issued a stay at home order due to the COVID-19 pandemic, effective at

noon on March 24, 2020.  At the Debtor's 341 meeting, which occurred telephonically

on April 6, 2020, the Debtor confirmed that its only tenant, Town Hospitality Group, Inc., the operating entity that operated both the hotel rooms and the restaurant on the property, had effectively shut down on or about March 24, 2020.

26.     Although discussions with counsel had occurred after the stay at home order about the April 2020 Cash Collateral Payment, no April 2020 Cash Collateral Payment was made.

27.     At the 341 meeting, the Debtor also confirmed that at that time its tenant operating entity was cash negative based on requests for refunds for deposits made for summer hotel room reservations.

28.     While Avidia appreciates the Debtor's circumstances during the pandemic, Avidia has seen nothing to show any likelihood that any May 2020 Cash Collateral Payment could be made or what current reservations are for the critical Memorial Day to Labor Day summer season.

29.     At this time, Avidia has no comfort level as to whether the Debtor's operating entity will be able to open at any time in the foreseeable future.

30.     Avidia at this time also has no confidence in previous valuation numbers for the property given the impact of the pandemic on such a property and such an operating entity as tenant.

31.     There have been no post-petition payments made by the Debtor.

32.     The Debtor is in default under the $1,875,000.00 Note and under the First Mortgage.

33.     The Debtor is in default under the $1,125,000.00 Note and under the Second Mortgage.

34.    Avidia Bank seeks relief from stay as a secured creditor to enforce its right under the $1,875,000.00 Note, under the First Mortgage, under the $1,125,000.00 Note and under the Second Mortgage and applicable law.  In support thereof, Avidia Bank states that it is entitled to relief, pursuant to 11 U.S.C. 362 (d)(1) for cause, including but not limited to, on the basis that the Debtor is in default on said contractual obligations.

WHEREFORE, Avidia Bank prays as follows:

1.    That it, that it, and its successors and/or assigns, be granted relief from automatic stay for the purpose of: (i) exercising its rights under its agreements with the Debtor and under applicable law, including, without limitation, taking possession of the mortgage premises and/or foreclosing or accepting a deed in lieu of foreclosure of its mortgage on said premises; (ii) preserving its right to seek any deficiency to the extent permitted by state and federal law, including 11 U.S.C. §524(a); (iii) bringing such actions, including, without limitation, summary process proceedings, as are permissible by law;

2.    That, as an alternative, this Court schedule an evidentiary hearing for as soon as current orders will allow on the issue of valuation of the property and on the security interest in the Tenant Collateral, and that an expedited discovery schedule be ordered allowing the Bank access and information in order to prepare for such an evidentiary hearing;

3.    That this Court order such other further relief as it deems just and applicable.

AVIDIA BANK
By Its Attorney:

*/s/ Howard B. D'Amico*
Howard B. D'Amico (BBO# 553420)
Howard B. D'Amico, P.C.
33 Waldo Street
Worcester, MA  01608
(508) 793-1606
hdamico@hbdpc.com

Dated: May 4, 2020

<u>CERTIFICATE OF SERVICE</u>

I, Howard B. D'Amico, do hereby certify that on this 4th day of May, 2020, I caused to be served a copy of the foregoing Motion for Relief From Stay on the following parties, electronically by the Court's ECF system:

<u>Office of the United States Trustee</u>
John Fitzgerald
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

<u>Debtor's Counsel</u>
David B. Madoff, Esq.
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035

Steffani Pelton, Esq.
Madoff & Khoury LLP
124 Washington Street
Foxborough, MA 02035


and upon the following parties, postage prepaid by first-class mail:

THG Properties LLC
386 Commercial Street
Provincetown, MA 02657

Town Hospitality Group, Inc.
386 Commercial Street
Provincetown, MA 02657

James D. DeRosier
21 Bradford Street Ext. 14
Provincetown, MA 02657

Ryan B. Campbell
21 Bradford Street Ext. 14
Provincetown, MA 02657

Todd A. Tierney
76 Amber Drive
San Francisco, CA 94131

Gregory F. Miscikowski
76 Amber Drive
San Francisco, CA 94131

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114

U.S. Small Business Association
10 Causeway Street
Boston, MA 02222

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

Town of Provincetown
Tax Collector
260 Commercial Street
Provincetown, MA 02657

## PROMISSORY NOTE
(PERMANENT)

**$1,875,000.00**                                    Provincetown, Massachusetts
                                                          March 31, 2017

FOR VALUE RECEIVED, **THG PROPERTIES LLC**, a Massachusetts limited liability company having a principal place of business at 386 Commercial Street, Provincetown, Massachusetts 02657 (collectively with its successors and/or permitted assigns, "**Borrower**"), as of the date first set forth above (the "**Note Date**"), hereby promises to pay to

### AVIDIA BANK,

a Massachusetts-chartered savings bank (collectively with its successors and/or assigns, "**Lender**"), OR ORDER, at Lender's principal place of business located at 42 Main Street, Hudson, Massachusetts 01749-0190 (or such other office of Lender as Lender may from time to time direct), the principal sum of

ONE MILLION EIGHT HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS (**$1,875,000.00**)

(or so much thereof as may be advanced and outstanding from time to time) together with interest on the unpaid principal until paid at the rate and in the manner hereinafter provided. Any and all payments made in connection with this Promissory Note (PERMANENT) (as amended, restated, supplemented and/or otherwise modified from time to time, this "**Note**") shall be made in lawful money of the United States of America in immediately available funds, without counterclaim or setoff and free and clear of, and without any deduction or withholding for, any taxes or other payments.

This Note is issued in conjunction with a certain Loan Agreement (CONSTRUCTION) dated as of the Note Date by and between Borrower and Lender, all of the terms and conditions of which are incorporated herein by this reference (as amended, restated, supplemented and/or otherwise modified from time to time, the "**Loan Agreement**"). This Note evidences advances of the proceeds of the Permanent Loan made by Lender to or for the benefit of Borrower under and pursuant to the terms and conditions of the Loan Agreement.

1.      **DEFINITIONS**.   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Loan Agreement, and such terms are incorporated herein by this reference.   For purposes of this Note, in addition to any other terms defined herein (or otherwise incorporated herein by reference), the below-listed terms shall have the following meanings:

1.1     "**Business Day(s)**" means any day other than a Saturday, a Sunday or any other day which shall be in The Commonwealth of Massachusetts ("**Massachusetts**") a day on which commercial banking institutions are authorized or required by law or executive order to be closed for business.

1.2     "**Change Date**" means, in each instance, that certain date that occurs upon the expiration of each successive sixty (60) month period running *ad seriatim* from the Conversion Date (hereinafter defined) until the Maturity Date; and the first such "Change Date" to occur (*i.e.*, the date certain occurring sixty (60) months after the Conversion Date) is herein referred to as the "**First Change Date**".

1.3     "**Conversion Date**" means that certain date occurring upon the expiration of the Phase I Period (hereinafter defined), and which such Conversion Date marks the commencement of the Phase II Period (hereinafter defined).

1.4     "**FHLBB Rate**" means the Federal Home Loan Bank of Boston Five (5) Year Classic Advance Rate, or any successor rate thereto (as the case may be), as published from time to time at

www.fhlbboston.com; or, if not so published, and at Lender's option, by any other commercially available source or publication from time to time providing quotations of (i) such rate, (ii) any such successor rate, or (iii) commercially reasonable comparable index or reference rate, in each case as determined and/or selected by Lender in its sole but reasonable discretion and in commercial good faith.

1.5    "**Floor Rate**" means a per annum rate of interest equal to five hundredths of one percent (5.00%), and which such rate the Note Rate (hereinafter defined) shall never be less than (as provided in Section 2.2 below).

1.6    "**Maturity Date**" means that certain date occurring on the twenty-sixth (26th) anniversary of the Note Date.

1.7    "**Phase I Period**" means the twelve (12) month period of time commencing on the Note Date and ending on the first (1st) anniversary thereof.

1.8    "**Phase II Period**" means that certain period of time commencing on the Conversion Date and ending on the Maturity Date.

1.9    "**Prime Rate**" means the so-called "Prime Rate" as published from time to time in *The Wall Street Journal* (Eastern Edition; available online as of the Note Date at: http://online.wsj.com/mdc); or, if not so published, and at Lender's option, by any other commercially available source or publication from time to time providing quotations of (i) such rate, (ii) any such successor rate, or (iii) commercially reasonable comparable index or reference rate, in each case as determined and/or selected by Lender in its sole but reasonable discretion and in commercial good faith.

2.    **INTEREST**.

2.1    Note Rate.

2.1.1    The unpaid principal of this Note from time to time outstanding shall bear interest at a rate per annum (the "**Note Rate**") computed on the basis of the actual number of days elapsed over a year assumed to have 360 days; provided that interest shall be due for the actual number of days elapsed during each period for which interest is being charged. Except as otherwise provided herein, the Note Rate shall be calculated as follows:

(a)    *During the Phase I Period*: The Note Rate shall be at a *fluctuating* rate annum equal to the aggregate sum of (i) the Prime Rate, *plus* (ii) two hundred fifty (250) basis points, fully floating.

(b)    *During the Phase II Period*:

(i)    During the sixty (60) month period commencing on the Conversion Date and ending on the First Change Date, the Note Rate shall be a *fixed* rate per annum equal to five percent (5.00%); and

(ii)    During each successive sixty (60) month period commencing with the First Change Date and on each Change Date thereafter, the Note Rate shall be a *fixed* rate per annum equal to the aggregate sum of (i) the FHLBB Rate as published on the applicable Change Date that corresponds with the start of each such sixty (60) month period, *plus* (ii) three hundred (300) basis points.

2.1.2    In the event the Conversion Date and/or any Change Date is not a Business Day, then, for purposes of calculating the Note Rate applicable to the sixty (60) month period that follows such

Conversion Date and/or Change Date, the FHLBB Rate used to calculate such applicable Note Rate shall be the FHLBB Rate as published on the Business Day immediately preceding such Conversion Date and/or Change Date.

        2.1.3    Borrower hereby expressly acknowledges and agrees that the Note Rate from time to time charged hereunder may not be the best, lowest and/or favored rate of interest charged by Lender to borrowers other than Borrower, and any representation or warranty in that regard is hereby expressly disclaimed.

        2.2    Floor Rate Limitation.  Notwithstanding the foregoing calculation(s) of the Note Rate provided by Section 2.1.1 above, nor any other terms of this Note or any other of the Loan Documents to the contrary, Borrower hereby expressly acknowledges and agrees that at no time while any amounts under this Note are outstanding shall the Note Rate be less than the Floor Rate.

        2.3    Default Rate.  Overdue payments of principal (whether at stated maturity, by acceleration or otherwise) hereunder, and, to the maximum extent permitted by applicable law, overdue interest, shall be due and payable immediately upon demand therefor and, until paid in full, shall bear interest at a rate per annum equal to four percent (4.00%) above the Note Rate (the "**Default Rate**"); *provided, however,* that if such interest exceeds the maximum amount permitted to be paid under applicable law, then such interest shall be reduced to such maximum permitted amount (and any such excess interest so paid shall be applied) in accordance with the provisions of the Section entitled "*Usury*" contained in the Loan Agreement.

3.    **PAYMENTS**.

        3.1    Payments.  Subject to the terms and conditions of this Note and all other of the Loan Documents, Borrower hereby agrees that:

        3.1.1    during the Phase I Period, payments of interest only at the then-applicable Note Rate on the unpaid and outstanding principal hereof shall be due and payable by Borrower monthly in arrears, commencing one (1) month from the Note Date, and on the same day of each month thereafter until the Conversion Date;

        3.1.2    during the Phase II Period, installment payments of principal and interest at the then-applicable Note Rate shall be due and payable by Borrower monthly in arrears, commencing one (1) month from the Conversion Date, and on the same day of each month thereafter, with each such payment being that amount of combined principal and interest which would (in the sole discretion of Lender) amortize the then-outstanding principal balance of this Note with interest thereon over an assumed amortization period of up to twenty-five (25) years from the Conversion Date (such period, the "**Amortization Period**"); and

        3.1.3    all principal, interest and other indebtedness due hereunder, if not sooner paid (whether by voluntary or involuntary prepayment, acceleration or otherwise), shall in all events be due and payable without further notice or demand on the Maturity Date.

        3.2    Adjustment of Certain Payments.  Borrower hereby expressly acknowledges and agrees as to, and confirms its understanding of, the following:

        3.2.1    during the Phase II Period, any one or more monthly installment payments of combined principal and interest from time to time due hereunder may be subject to adjustment by Lender at any time or times (in Lender's sole discretion, but without obligation on Lender's part) in order to ensure that payments hereunder are sufficient to properly amortize the then-outstanding principal balance of this Note, with interest thereon, over the foregoing Amortization Period; and

3.2.2    if this Note or any payment hereunder becomes due on a day which is not a Business Day, the due date of this Note or such payment shall be extended to the next succeeding Business Day, and such extension of time shall be included in computing interest and fees in connection with such payment.

3.3    <u>Application of Payments</u>.  Prior to the occurrence of an Event of Default (hereinafter defined), the order of application of all payments received from Borrower hereunder shall be as follows: (i) to unpaid late charges, costs of collection and other unpaid amounts due hereunder and/or under any other of the Loan Documents (other than principal or interest); (ii) to interest on the unpaid balance of this Note; and (iii) to the unpaid principal of this Note.  After the occurrence of an Event of Default, Lender shall apply any payments received from Borrower in such order as Lender may elect in its sole discretion.

3.4    <u>Late Charges</u>.  If any payment of principal or interest (or both, as the case may be) due hereunder is not made within ten (10) days after its due date, Borrower hereby promises to pay in addition thereto a late charge equal to five percent (5.00%) of the amount of such payment as liquidated compensation to Lender for the extra expense of Lender to process and administer the late payment; Borrower hereby agreeing that any other measure of compensation for a late payment is speculative and impossible to compute.  This provision for late charges shall not be deemed to extend the time for payment or be a "grace period" or "cure period" that gives Borrower a right to cure an Event of Default.  Imposition of late charges is not contingent upon the giving of any notice or lapse of any cure period provided for in any of the Loan Documents, and shall not be deemed a waiver of any right or remedy of Lender including, without limitation, acceleration of and demand on this Note.  Borrower hereby acknowledges and agrees that any such late charges are not interest and shall not be subject to refund or rebate, nor shall they be credited against any other amount(s) due hereunder or under any other of the Loan Documents.

4.    <u>**PREPAYMENT**</u>.

4.1    <u>Prepayments; Prepayment Fee</u>.  Borrower shall have the privilege of prepaying the principal amount of this Note, in whole or in part (in each instance, a "<u>**Prepayment**</u>"); <u>*provided, however,*</u> that in the event Borrower desires to make any Prepayment, Borrower shall in each instance give Lender not less than fifteen (15) days' prior written notice of its intention to make such Prepayment, which such written notice shall specify the amount of such Prepayment and the date upon which Borrower will make such Prepayment (which shall in all events be a Business Day); and <u>*provided further*</u> that, upon the date of any Prepayment, Borrower shall pay to Lender (i) the amount of the Prepayment and all unpaid interest on the then-outstanding principal balance of this Note accrued through such date, and (ii) a "<u>**Prepayment Fee**</u>" calculated as follows:

4.1.1    if a Prepayment is made on or before the first (1st) anniversary of the Note Date, the Prepayment Fee shall be five percent (5.00%) of the principal amount prepaid;

4.1.2    if a Prepayment is made during the period commencing immediately after the first (1st) anniversary of the Note Date and ending on the second (2nd) anniversary of the Note Date, the Prepayment Fee shall be four percent (4.00%) of the principal amount prepaid;

4.1.3    if a Prepayment is made during the period commencing immediately after the second (2nd) anniversary of the Note Date and ending on the third (3rd) anniversary of the Note Date, the Prepayment Fee shall be three percent (3.00%) of the principal amount prepaid;

4.1.4    if a Prepayment is made during the period commencing immediately after the third (3rd) anniversary of the Note Date and ending on the fourth (4th) anniversary of the Note Date, the Prepayment Fee shall be two percent (2.00%) of the principal amount prepaid; and

4.1.5    if a Prepayment is made during the period commencing immediately after the fourth (4th) anniversary of the Note Date and ending on the fifth (5th) anniversary of the Note Date, the Prepayment Fee shall be one percent (1.00%) of the principal amount prepaid.

5.    **DEFAULT; OTHER DOCUMENTS; SECURITY; REMEDIES**.

5.1    This Note is (i) issued in conjunction with the Loan Agreement; and (ii) secured by, *inter alia*, the Mortgages and the Security Agreement (collectively, the "**Security Instruments**").   No reference to the Loan Agreement or the Security Instruments, nor to any provisions thereof, shall affect or impair the absolute and unconditional obligation of Borrower to pay the principal of and interest on this Note as herein provided.  Borrower acknowledges and agrees that the occurrence of an "Event of Default" under the Loan Agreement (as such term is defined therein) shall also constitute an "**Event of Default**" hereunder and a "default" or "Event of Default" (howsoever such terms may be used or defined) under all other of the Loan Documents.

5.2    At Lender's option at any time after the occurrence of an Event of Default which is continuing, Lender may demand immediate repayment of all outstanding indebtedness under this Note and declare all Obligations immediately due and payable without further action of any kind (including, without limitation, presentment, protest or other notice of dishonor of any kind, all of which are hereby expressly waived by Borrower).  No course of dealing or delay in accelerating the maturity of this Note, or in taking any other action with respect to any Event(s) of Default, shall affect rights later to take such action with respect thereto, and no waiver as to any one Event of Default shall affect rights as to any other Events of Default.

5.3    Any and all deposits or other sums at any time credited by or due from Lender to Borrower or any endorser hereof, and any and all securities or other property of any such Person at any time in the possession or custody of, or in transit to, Lender and/or any Affiliate thereof, may at all times be held and treated as collateral security for the payment of this Note and any and all other liabilities or obligations (whether direct or indirect, absolute or contingent, sole, joint or several, secured or unsecured, due or to become due, now existing or hereafter arising) of any such Person to Lender; and each such Person hereby expressly (i) grants to Lender a security interest in, and right of setoff against, all of the same; and (ii) acknowledges and agrees that, at any time, without demand or notice, Lender may set-off against the same or any part thereof and apply the same to any such liabilities or obligations even though unmatured, and regardless of the adequacy of any other collateral or security for the repayment of this Note or any other of the Obligations.  BORROWER KNOWINGLY AND VOLUNTARILY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL OR SECURITY WHICH SECURES THIS NOTE PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS, SECURITIES AND/OR OTHER PROPERTY OF BORROWER OR ANY GUARANTOR AND/OR ENDORSER HEREOF.

5.4    Lender shall not be required to marshal any present or future security for, or guarantees of, the Obligations or to resort to any such security or guaranty in any particular order and each of Borrower and any guarantor and/or endorser hereof hereby waives, to the fullest extent that each can lawfully do so, (i) any right they might have to require Lender to pursue any particular remedy before proceeding against them, and (ii) any right to the benefit of, or to direct the application of, the proceeds of any collateral or security for the indebtedness evidenced by this Note (or any other of the Obligations) until all Obligations are paid and performed, and indefeasibly satisfied and discharged, in full.

6.      **CERTAIN WAIVERS**.

6.1      Borrower and each surety, guarantor, endorser and/or any other Person now or hereafter liable for the payment of all or any part of the indebtedness evidenced by this Note hereby (i) severally agree, by making, endorsing or guaranteeing this Note, or by making any agreements to pay all or any part of the indebtedness evidenced by this Note, to waive presentment for payment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and (ii) voluntarily and expressly consent, on one or more occasions, without notice or further assent to: (a) the substitution, exchange and/or release of any security or collateral securing this Note, or any part thereof, at any time; (b) the acceptance or release by Lender at any time of any additional collateral or security for, or of any other Persons directly or indirectly liable for the indebtedness evidenced by, this Note; (c) the modification or amendment at any time or times, of this Note, the Loan Agreement, any other of the Loan Documents and/or any other instrument(s) or document(s) from time to time securing this Note or the repayment hereof at the request of any Person liable hereon; (d) the granting by Lender of any extension of the time for payment of this Note, or for the performance of the agreements, covenants and conditions contained in this Note, in the Loan Agreement, in any other of the Loan Documents and/or in any other instrument(s) from time to time securing this Note or the repayment hereof, at the request of any Person liable hereon; and (e) any and all forbearances and indulgences whatsoever. The consents set forth above in this Section shall not alter or diminish the liability of any such Persons.

6.2      **EXCEPT AS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH OF BORROWER AND LENDER (EACH INDIVIDUALLY, A "PARTY") HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ANY RIGHT SUCH PARTY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING DIRECTLY OR INDIRECTLY TO THE OBLIGATIONS, ANY COLLATERAL OR SECURITY FOR THE OBLIGATIONS, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, AND/OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, WHETHER BASED ON CONTRACT, TORT OR OTHERWISE, AND WHETHER BY CLAIM, COUNTERCLAIM OR OTHERWISE. EACH PARTY HEREBY: (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE OR ANY OTHER PERSON HAS REPRESENTED TO IT, WHETHER EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION; (B) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO EXECUTE AND DELIVER THIS INSTRUMENT AND ALL OTHER OF THE LOAN DOCUMENTS TO WHICH IT IS A PARTY, OR TO WHICH IT IS OTHERWISE BOUND, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION; AND (C) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED.**

7.      **CERTAIN AGREEMENTS; GOVERNING LAW; MISCELLANEOUS**.

7.1      Borrower hereby acknowledges and agrees that all payments due and payable under this Note are in addition to any and all other specified amounts that may from time to time be due and payable under any other of the Loan Documents (whether upon demand or otherwise in accordance with the provisions thereof). In furtherance of the foregoing (but without implied limitation), Borrower hereby agrees to pay upon demand any and all Costs and Expenses, including, without limitation, any and all attorneys' fees, costs, expenses and/or disbursements, and any costs of collection, which may be incurred from time to time by Lender or any Affiliates, attorneys, accountants, consultants, agents, appraisers and/or representatives in connection with: (i) the preparation, administration, review, amendment, extension, increase and/or any other modification from time to time of this Note or any other of the Loan Documents, or otherwise in connection with the Obligations; and/or (ii) the enforcement of any obligations under this Note or under any other of the Loan Documents, or with respect to any other

Obligations. In the event any of the foregoing amounts referenced in this <u>Section 7.1</u> shall remain unpaid after Lender's demand therefor, such amounts shall bear interest at the Default Rate from the date of Lender's demand until paid in full.

7.2    Borrower hereby acknowledges and agrees that Lender may at any time and from time to time (i) pledge all or any portion of its rights under this Note, and/or (ii) sell or assign, in whole or in part, or grant participations in, this Note and/or any obligations evidenced hereby or by any other of the Loan Documents, subject to and in accordance with the terms of the Loan Agreement concerning the foregoing (i) and (ii) (if any). If any term of this Note, or the application hereof to any Persons or set of circumstances, shall to any extent be invalid, illegal and/or unenforceable, the remainder of this Note, or the application of such provision or part thereof to Persons or circumstances other than those as to which it is invalid, illegal and/or unenforceable, shall not be affected thereby, and (a) each term of this Note shall be valid and enforceable to the fullest extent consistent with applicable law, and (b) this Note shall be interpreted and construed as though such invalid, illegal and/or unenforceable term or provision (or any portion thereof) were not contained in this Note.

7.3    This Note and the terms and provisions hereof shall be the joint and several obligation of Borrower and all sureties, endorsers and guarantors hereof, and shall be binding upon such Persons and their respective heirs, executors, legal representatives, estates, successors, successors-in-title and assigns (as the case may be), and each or any of them, whether by voluntary action of the parties or by operation of law. This Note shall inure to the benefit of each Party; and, as used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, executors, legal representatives, estates, successors, successors-in-title and assigns, whether by voluntary action of the parties or by operation of law. If Borrower shall at any time (whether on the Note Date or at any time thereafter) consist of more than one Person, each such Person shall be jointly and severally liable to perform, observe and pay all of the obligations of Borrower under this Note and all other of the Obligations. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural and vice versa. Titles of headings and sections in, and the title of, this Note, if any, are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions of this Note or any other of the Loan Documents. This Note and the other Loan Documents contain the entire agreements between the parties hereto or bound hereby relating to the subject matter hereof and thereof. Except as otherwise herein provided, no modification or amendment of this Note shall be effective, and the same shall be deemed to be null and void, unless the same shall be made in writing and signed by each Party. The term "Lender" shall include the holder or holders of this Note at the time in question. As used herein, in all other of the Loan Documents and in any other agreement, instrument or other document now or hereafter executed in connection with this Note or with respect to all or any part of the Obligations, the term "**and/or**" means one or the other or both, or any one or more or all, of the things or Persons in connection with which the conjunction is used.

7.4    Borrower hereby (i) represents to Lender that it has consulted with and obtained—or has been afforded, and voluntarily elected not to avail itself of, the opportunity to consult with and obtain— the advice and counsel of one or more independent and competent attorneys of Borrower's own selection with respect to its execution and delivery of all of the Loan Documents to which it is a signatory (and/or to which Borrower or any of its property is otherwise bound) and the transactions contemplated hereby and thereby; (ii) confirms its full and complete understanding of all of the terms and conditions of all such Loan Documents and all such transactions; (iii) agrees not to assert or interpose, and hereby waives, any defense or claim against Lender (and/or any Affiliates, employees, officers, directors, shareholders, members, principals, attorneys, agents or representatives thereof or therefor) by reason of not having been represented by independent and competent attorneys in connection with any such Loan Documents and/or transactions; and (iv) acknowledges that Lender is expressly relying on the immediately preceding (i), (ii) and (iii) in connection with its acceptance of this Note and the extension of the loan hereby contemplated.

7.5    This Note and the obligations arising hereunder shall at all times be governed by, and construed in accordance with, the laws of Massachusetts, excluding any conflicts of law rule or principle which might refer such construction to the laws of any other jurisdiction. Borrower hereby knowingly, intentionally and voluntarily: (i) consents and submits to non-exclusive jurisdiction in Massachusetts over any suit, action or proceeding by any Person arising from or relating to the Obligations or any of the Loan Documents; (ii) agrees that any such action, suit or proceeding may be brought in any state or federal court of competent jurisdiction sitting in Massachusetts, and, to the fullest extent permitted by applicable law, further agrees that it will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the right of Lender to bring any action, suit or proceeding in any other forum); (iii) waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court; and (iv) consents to service of process in any such suit being made upon Borrower by mail at the address specified for Borrower in the Section entitled "*Notices*" in the Loan Agreement (unless Borrower has by five (5) days' prior written notice to Lender specified another address in accordance with the notice and change of address provisions therein).

7.6    Borrower hereby acknowledges and agrees that this Note evidences an obligation of a commercial nature, and not an obligation of a personal, family, agricultural or household nature. Time is of the essence with respect to all provisions of this Note.

7.7    Upon receipt of an affidavit signed by a duly authorized officer of Lender as to the loss, theft, destruction or mutilation of this Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

7.8    All notices, demands, requests, consents or approvals required, permitted, contemplated or desired to be given hereunder shall be in writing, and shall be made and deemed to have been validly served, given or delivered in accordance with the Section entitled "*Notices*" in the Loan Agreement.

*[Remainder of Page Intentionally Left Blank;*
*Signature Page Follows]*



**IN WITNESS WHEREOF**, Borrower has caused this Note to be executed by its duly authorized signatory as an instrument under seal as of the Note Date.

*BORROWER*:

**THG PROPERTIES LLC**

*Witness to Borrower's Signature:*

Witness Signature

Witness Name: ~~GEORGE A. HEWETT, ESQ.~~

~~DAVIS, MALM & D'AGOSTINE, P.C.~~
~~One Boston Place~~
~~Boston, MA 02108~~

By:

Name: James D. DeRosier

Title:  Manager

THE COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

On this 31st day of March, 2017, before me, the undersigned notary public, personally appeared JAMES DEROSIER, in his capacity as Manager of **THG PROPERTIES LLC**, who proved to me through satisfactory evidence of identification, which was ☒ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person whose name is signed on the preceding document, and who acknowledged to me that he signed it voluntarily for its stated purpose in such capacity as Manager of **THG PROPERTIES LLC**.

*(Notarial Seal)*

Notary Public:

Printed Name: George A. Hewett

My Commission Expires: Jan 14, 2022

BR 3039   P9286   #15603
03-31-2017 @ 02:23p

Exhibit "B"

**MORTGAGE AND SECURITY AGREEMENT**
(INCLUDING ASSIGNMENT OF LEASES AND RENTS)
(PERMANENT)

      This MORTGAGE AND SECURITY AGREEMENT (INCLUDING ASSIGNMENT OF LEASES AND RENTS) (PERMANENT) (as the same may be amended, restated, replaced, supplemented or otherwise modified, this "**Mortgage**") is made as of March 13, 2017 (the "**Mortgage Date**") by **THG PROPERTIES LLC**, a Massachusetts limited liability company (as mortgagor) having a principal place of business at 386 Commercial Street, Provincetown, Massachusetts 02657 (collectively with its permitted assigns and any successors in title to the Mortgaged Property (hereinafter defined), other than Lender (hereinafter defined), hereinafter referred to as "**Borrower**").

1.    **MORTGAGE AND SECURITY AGREEMENT**.

    1.1    Original Grant. For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower does hereby mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to **AVIDIA BANK**, a Massachusetts-chartered savings bank (as mortgagee) having a principal place of business at 42 Main Street, Hudson, Massachusetts 01749-0190 (collectively with its successors, assigns and/or any other holder or holders from time to time of the Note (hereinafter defined), sometimes herein referred to as "**Lender**"), with MORTGAGE COVENANTS and with the STATUTORY POWER OF SALE and upon the STATUTORY CONDITION for the benefit and security of Lender, so much of the Mortgaged Property (hereinafter defined) as constitutes the Real Property (hereinafter defined); and Borrower hereby grants to Lender a first (1st) priority security interest in all of Borrower's right, title, interest and claims in, to and under so much of the Mortgaged Property as constitutes the Collateral (hereinafter defined), all to secure the following obligations of Borrower to Lender, which such following obligations are herein referred to as the "**Mortgage Debt**"):

    1.1.1    the payment of amounts from time to time due pursuant to the terms of a certain Promissory Note (PERMANENT) dated the Mortgage Date made and delivered by Borrower to the order of Lender in the original principal amount of ONE MILLION EIGHT HUNDRED SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS (**$1,875,000.00**) (as amended, restated replaced, supplemented, extended and otherwise modified from time to time, the "**Note**"), at the times, in the manner and with interest all as more fully provided therein (including any and all renewals and advances thereunder, all whether now or hereafter made);

    1.1.2    the payment and performance of all "Obligations" as such term is defined in that certain Loan Agreement (CONSTRUCTION) dated as of the Mortgage Date by and between Lender and

*Property Address: 386 Commercial Street, Provincetown, Massachusetts 02657*

**This instrument, after recording, to be returned to:**
Devon A. Kinnard, Esquire
DAVIS, MALM & D'AGOSTINE, P.C.
One Boston Place, 37th Floor
Boston, MA 01208
*TO BE RECORDED WITH THE BARNSTABLE COUNTY (MA) REGISTRY OF DEEDS.*

815600.1

Borrower (hereinafter, the "**Obligations**"), all of the terms and conditions of which are incorporated herein by this reference (amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**");

        1.1.3    the performance of all covenants and agreements contained in the Note, the Loan Agreement, this Mortgage that certain Assignment of Leases and Rents, dated as of the Mortgage Date, made by Borrower in favor of Lender and delivered in connection with this Mortgage (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Assignment of Leases**"), this Mortgage and all other agreements, instruments or other documents evidencing or securing or otherwise setting out conditions, covenants, representations and/or remedies in favor of Lender in connection with the Loan and/or the Obligations, or otherwise executed or delivered in connection therewith (as any one or more of the same may from time to time amended, restated and/or otherwise modified, collectively the "**Loan Documents**").

      1.2    <u>Certain Definitions</u>.  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Loan Agreement.  As used in this Mortgage:

        1.2.1    "**Taxes**" shall mean all taxes, assessments, water rates or sewer rents, now or hereafter levied or assessed or imposed against the (i) Mortgaged Property or part thereof, together with all interest and penalties thereon; and/or (ii) Rents, issues, income or profits thereof or upon the Lien(s) or estate hereby created, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or ad valorem real estate or personal property taxes or as income taxes; and

        1.2.2    "**Other Charges**" shall mean all ground rents, maintenance charges, impositions other than Taxes, any so-called "common expenses" or expenses allocated to and required to be paid by Borrower, and any other charges now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof.

      1.3    <u>Mortgaged Property</u>.  As used herein, the "**Mortgaged Property**" collectively means and refers to all of the real, personal, tangible and intangible property, rights, interests and estates of Borrower, whether now owned or hereafter acquired by Borrower (all of which Borrower does hereby mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender with mortgage covenants and with the statutory power of sale and upon the statutory condition), including, without limitation, all of Borrower's right, title, interest and claims in, to and under the following:

        1.3.1    the real property described in <u>Exhibit A</u> attached hereto and made a part hereof (the "**Land**");

        1.3.2    all additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise, be expressly made subject to the lien of this Mortgage;

        1.3.3    the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**"); *provided, however,* that notwithstanding the foregoing, "Improvements" shall not include any property which tenants are entitled to remove pursuant to Leases (hereinafter defined), except to the extent that Borrower shall have any right or interest therein;

        1.3.4    all easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, permits, licenses, rights of way and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or

hereafter belonging, relating or pertaining to the Land and the Improvements and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

1.3.5    all "equipment," as such term is defined in Article 9 of the UCC (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, heating, ventilation or air conditioning equipment, garbage equipment and apparatus, incinerators, boilers, furnaces, motors, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**"); *provided, however*, that notwithstanding the foregoing, "Equipment" shall not include any property belonging to tenants under Leases, except to the extent that Borrower shall have any right or interest therein;

1.3.6    all Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Mortgaged Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Mortgaged Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). It is understood and agreed by Lender and Borrower that the Fixtures and all the Improvements are part and parcel of the Land (the Land, the Improvements and the Fixtures are collectively herein referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby; *provided, however*, that notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to Leases, except to the extent that Borrower shall have any right or interest therein;

1.3.7    all furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the UCC, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the UCC, as adopted and enacted by the state or states (or commonwealth or

commonwealths) where any of the Mortgaged Property is located (as amended from time to time, the "**UCC**"), superior in lien to the lien of this Mortgage and all proceeds and products of the above;

1.3.8    all leases (including, without limitation, ground leases, subleases or subsubleases), lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy, all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases or other agreements entered into in connection with such leases, subleases, subsubleases or other agreements, and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, deposits (including, without limitation, security, utility and other deposits) accounts and receipts from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Mortgage Debt and the performance of the Obligations;

1.3.9    all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to all, or any portion of, or any interest in, the Mortgaged Property, whether from the exercise of the right of condemnation or eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of any such right), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property including, without limitation, any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of all or any portion of the Improvements, the Equipment, the Fixtures, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Mortgaged Property or any portion thereof (individually and collectively, "**Awards**"); and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation;

1.3.10    all proceeds of insurance in respect of the Mortgaged Property under any and all policies of insurance covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any such policies, judgments or settlements made in lieu thereof, in connection with any fire or other casualty to the Mortgaged Property;

1.3.11    all refunds, rebates or credits in connection with any reduction in Taxes or Other Charges charged against the Mortgaged Property;

1.3.12    all proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and Awards, into cash or liquidation claims;

1.3.13    the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Lender in the Mortgaged Property;

1.3.14    all of Borrower's right, title, interest and claims in, to and under any and all contracts, agreements, certificates, instruments, franchises, permits, licenses, plans, specifications and

other documents (whether now or hereafter entered into) respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof, and any Improvements or any business or activity conducted on the Land and any part thereof, including, without limitation, the right, upon the occurrence of an Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), to receive and collect any sums payable to Borrower thereunder;

1.3.15 all trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Mortgaged Property; *provided*, *however*, that excluded from this <u>Section 1.3.15</u> shall be any such general intangibles which are the sole and exclusive property of tenants pursuant to Leases, except to the extent that Borrower shall have any right or interest therein;

1.3.16 all reserves, escrows and deposit accounts maintained by Borrower with respect to the Mortgaged Property, including, without limitation, all accounts established or maintained pursuant to this Mortgage, the Loan Agreement and/or any other of the Loan Documents; together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof; and

1.3.17 any and all other rights of Borrower in and to the items set forth in <u>Section 1.3.1</u> through <u>Section 1.3.16</u> above.

1.4 <u>Security Agreement</u>. This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the UCC. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Mortgaged Property including all accounts established by Lender pursuant to the Loan Agreement. By executing and delivering this Mortgage, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a first (1st) priority security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Mortgaged Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the UCC (all such portions of the Mortgaged Property so subject to the UCC collectively herein referred to as the "**Collateral**"). If an Event of Default shall occur and be continuing (beyond the expiration of any applicable notice, grace or cure period), Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender after the occurrence and during the continuance of any Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees and costs, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Mortgage Debt in such priority and proportions as Lender in its discretion shall deem proper. Borrower's (debtor's) principal place of business is as set forth on the first (1st) page hereof and the address of Lender (secured party) is as set forth on the first (1st) page hereof.

1.5     Fixture Filing.  Certain of the Mortgaged Property is or will become "fixtures" (as that term is defined in the UCC) on the Land, and this Mortgage, upon being filed or recorded in the real estate records of the city or county wherein such fixtures are situated (which may include, without limitation, in or with any registry, clerk, court or land court), shall operate also as a financing statement (naming Borrower as the Mortgage Debtor and Lender as the Secured Party) filed as a fixture filing in accordance with the applicable provisions of said UCC upon such of the Mortgaged Property that is or may become fixtures.  Notwithstanding the generality of the immediately preceding sentence regarding fixture filings (but not in limitation thereof), Borrower hereby consents to Lender filing one or more UCC-1 financing statements (and any continuations and/or amendments thereof or thereto) with appropriate filing and recording offices (including, without limitation, in or with any office of the secretary of the state or commonwealth in which Borrower is organized and/or in which any of the Collateral is located) in order to perfect Lender's security interest in the Collateral granted herein.

1.6     Pledges of Monies Held.  Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender in connection with the Loan, including, without limitation, any sums deposited in the Operating Account, as additional security for the Obligations until expended or applied as provided in this Mortgage.

2.     **ASSIGNMENTS**.

2.1     Assignment of Leases and Rents.  Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute, and immediate assignment and not an assignment for additional security only.  Notwithstanding the generality of the immediately preceding sentence, and subject to the immediately following proviso and the terms of the Assignment of Leases, the Loan Agreement and Section 2.1.1 below, so long as there shall exist no Event of Default which is continuing beyond the expiration of any applicable notice, grace or cure period, Borrower shall be, and hereby is, granted a revocable license to collect, receive, use and enjoy the Rents and to enforce the terms of any Leases in the ordinary course of business (such license, hereinafter, the "**Rents License**"); *provided*, *however*, that such Rents License is subject to the condition that, among other things, Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Mortgage Debt, for use in the payment of such sums, and Borrower shall not collect any Rents or other payments under a Lease more than one (1) month in advance of the time that it is due under the terms of such Lease.

2.1.1     Upon or at any time after the occurrence of an Event of Default (which is continuing beyond the expiration of any applicable notice, grace or cure period), without (i) in any way waiving such Event of Default (or any other Events of Default), (ii) notice, or (iii) regard to the adequacy of any security for the Mortgage Debt, the Rents License shall be automatically revoked (and Borrower hereby expressly acknowledges and consents to such automatic revocation), and Lender may, at its option exercisable in its sole discretion, enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys, and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise (except in the event of fraud or willful misconduct on the part of Lender), and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto, and Borrower shall and hereby agrees to surrender possession of the Mortgaged Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may, at its option exercisable in its sole discretion: (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (ii) complete any construction on the Mortgaged Property in such manner and form as Lender deems advisable in sole but reasonable discretion; (iii) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property as Lender deems advisable in sole but reasonable discretion; (iv) exercise all rights and powers of Borrower with respect to

the Mortgaged Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Mortgaged Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver or trustee appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Mortgaged Property to Lender or to such receiver or trustee and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Mortgaged Property to the payment of the Mortgage Debt and the performance of the Obligations, in such order, priority and proportions as Lender shall deem advisable in sole but reasonable discretion after deducting therefrom all fees, Costs and Expenses (including the reasonable fees, costs and expenses and disbursements of Lender's legal counsel) incurred in connection with the aforesaid operations and any and all amounts necessary to pay the Taxes, Other Charges, insurance premiums and other Costs and Expenses in connection with the Mortgaged Property, as well as reasonable but market rate compensation for the services of Lender, its Affiliates, legal counsel, agents and employees.

2.1.2    Borrower hereby expressly agrees to in all events defend, indemnify and hold harmless Lender and each and all of the other Indemnified Parties from and against any and all liability, claims, suits, actions, Costs and Expenses, disbursements, losses and/or damages which may or might be directly or indirectly incurred by any one or more Indemnified Parties by virtue of the existence of, or as a consequence of any action taken by any of them (except for fraudulent actions or willful misconduct) in the exercise of the rights conferred by, the assignment(s) made, granted and set forth in <u>Section 2</u>.

2.2    <u>Assignment of Contracts, Licenses, Permits, Plans, Specifications, etc</u>.  To the maximum extent assignable, Borrower hereby assigns and grants to Lender all of Borrower's right, title, interest and claims in, to and under any and all contracts, agreements, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents (whether now or hereafter entered into) respecting or pertaining to, or otherwise directly or indirectly in connection with, the use, occupation, construction, management or operation of the Land and any part thereof, and any Improvements or any business or activity conducted on the Land and any part thereof, including, without limitation, the right, upon the occurrence of an Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), to receive and collect any sums payable to Borrower thereunder.  For the avoidance of doubt, the assignments and grants made by Borrower to Lender under this <u>Section 2.2</u> shall exclude the Rents and Leases, which such Rents and Leases are assigned and granted by Borrower to Lender under <u>Section 2.1</u> and upon (and subject to) the terms and conditions of the Assignment of Leases.

2.2.1    Upon the (i) payment and performance, and indefeasible satisfaction, in full, of the entirety of the Mortgage Debt, and (ii) filing or recording of a termination or discharge (as applicable) of this Mortgage and the lien and other Liens hereby created, all right(s), title(s) and interest(s) of Borrower granted and assigned to Lender pursuant to this <u>Section 2</u> shall automatically revert to Borrower without the necessity of further action or consent by Lender.

3.    **BORROWER COVENANTS**.  Borrower hereby covenants and agrees that:

3.1    <u>Payment of Debt</u>.  Borrower will pay the Mortgage Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

3.2    <u>Incorporation by Reference</u>.  All the covenants, conditions and agreements contained in (i) the Loan Agreement, (ii) the Note, and (iii) any and all other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

3.3    <u>Insurance</u>.  Borrower shall obtain and maintain, or cause to be maintained, in full force

and effect at all times insurance with respect to Borrower and the Mortgaged Property as required pursuant to the Loan Agreement.

3.4 <u>Impositions</u>. Upon and at any time after occurrence any Event of Default (which is continuing beyond the expiration of any applicable notice, grace or cure period), Borrower shall and hereby agrees to pay to Lender on a monthly basis on each payment date under the Note, in addition to any and all payments thereunder required and/or as otherwise required under any other of the Loan Documents (including, without limitation, this Mortgage), a monthly apportionment of one-twelfth $(1/12^{th})$ of the sum estimated by Lender to be sufficient to enable Lender to accumulate and make all payments of all Taxes (and, as applicable, Other Charges, insurance premiums and other reasonable Costs and Expenses) with respect to the Mortgaged Property (collectively, "**Impositions**") at least thirty (30) days' prior to the dates such Impositions become due. Any deficiency with respect to the amount of any such Impositions, when the actual amount thereof becomes known, shall be paid by Borrower to Lender immediately upon written demand therefor in immediately available funds and, if not so paid by Borrower immediately upon such written demand, Lender is hereby expressly authorized by Borrower to charge (but Lender shall not be obligated to charge) the same to the account of Borrower (including, without limitation, any account maintained by Borrower with Lender pursuant to the Loan Agreement). Lender shall maintain amounts collected pursuant to this <u>Section 3.4</u> in a non-interest bearing account which may be commingled with other funds of Lender. Lender shall apply said funds to the payment of Impositions to the extent such amounts are determined by Lender to be due and payable, and Borrower shall deliver to Lender all bills evidencing any such Impositions within five (5) days after the receipt thereof by Borrower. Borrower hereby expressly acknowledges and agrees that, (a) upon the occurrence of any Event of Default that continues beyond the expiration of any applicable notice, grace or cure period, Lender shall not be required to apply any funds paid and/or escrowed pursuant to this <u>Section 3.4</u>, and, to the maximum extent permitted by applicable law, Lender may setoff such funds against, and/or apply any such funds to, the Mortgage Debt and/or the Obligations; and (b) No interest shall be paid or credited with respect to any amounts paid by Borrower under this <u>Section 3.4</u>. Borrower hereby covenants and agrees to reimburse Lender immediately upon demand for any and all reasonable Costs and Expenses actually incurred by Lender, its agents and/or representatives in connection with Lender obtaining information concerning the amount of Taxes (and/or any other Impositions) from time to time due with respect to the Mortgaged Property or any part thereof, and Borrower hereby authorizes and consents to Lender obtaining any such information.

3.5 <u>Maintenance of Property</u>. Borrower shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender or as otherwise permitted pursuant to the Loan Agreement. Borrower shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any fire or other casualty or become damaged, worn or dilapidated or which may be affected by any condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

3.6 <u>Waste</u>. Borrower shall not commit or suffer any waste of the Mortgaged Property or make any change in the use of the Mortgaged Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Mortgaged Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Mortgaged Property or the security of this Mortgage. Borrower will not, without the express prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

3.7    <u>Payment for Labor and Materials</u>.

3.7.1    Subject to <u>Section 3.7.2</u> hereof, Borrower (i) will promptly pay (or cause to be paid) when due all bills and costs for labor, materials, and specifically fabricated materials ("**Labor and Material Costs**") incurred in connection with the Mortgaged Property, (ii) will, subject to the terms and conditions of the Loan Agreement, neither suffer nor permit to exist any mechanics' lien or similar Lien to remain against the Mortgaged Property by reason of work, labor, services and/or materials supplied or claimed to be supplied in connection with the Mortgaged Property, even though inferior to the Lien and other Liens created hereby and by the other Loan Documents, and (iii) neither suffer nor permit to exist in respect of the Mortgaged Property (or any part thereof) any Lien (other than the Liens created hereby and other than Permitted Liens).

3.7.2    After prior written notice to Lender, Borrower, at its own Cost and Expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that: (i) no Event of Default has occurred and is continuing beyond the expiration of any applicable notice, grace or cure period; (ii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Mortgaged Property, or Borrower shall have paid all of the Labor and Material Costs under protest; (iii) such proceeding shall not cause Borrower to be in default, breach or violation of any of Borrower's Contractual Obligations; (iv) neither the Mortgaged Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost; and (v) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender, to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

3.8    <u>Performance of Other Agreements</u>.  Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Mortgaged Property, and any amendments, modifications or changes thereto.

4.    **RELIANCE AND OBLIGATIONS**.

4.1    <u>No Reliance on Lender</u>.  The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower, as applicable, are experienced and have expertise in the business of owning, operating and maintaining (or causing to be maintained) properties similar to the Mortgaged Property, and Borrower and Lender are relying solely upon such experience, expertise and business plan in connection with the ownership and operation of the Mortgaged Property.  Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Mortgaged Property.

4.2    <u>Reliance by Lender</u>.

4.2.1    Borrower recognizes and acknowledges, and expressly confirms its understanding, that, in accepting the Note, this Mortgage and all other of the Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the representations and warranties of Borrower made in connection with the Mortgaged Property and the Collateral set forth in the Loan Agreement (and/or any other Loan Documents to which Borrower is a party and that contain any such representations and warranties), without any obligation to investigate the Mortgaged Property and/or the Collateral, and notwithstanding any such investigation that may have been heretofore made or caused to be made by Lender; that such reliance existed on the part of Lender prior to the Mortgage Date, that such representations and warranties are a material inducement to Lender in making the Loan; and that, in the absence of such representations and warranties, Lender would not be willing to make the Loan and accept the Note, this Mortgage or other of the Loan Documents.

4.2.2    Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Mortgaged Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for the repayment of the Mortgage Debt and the performance of the Obligations. Borrower acknowledges that Lender has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Borrower default in the repayment of the Mortgage Debt or the performance of the Obligations, Lender can recover the Mortgage Debt by a sale of the Mortgaged Property.

4.3    No Lender Obligations.

4.3.1    Notwithstanding the provisions of Sections 1.3.8, 1.3.14 or 2 hereof, or the provisions of the Assignment of Leases, Lender is not undertaking the performance of (i) any obligations under the Leases, or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

4.3.2    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Mortgage or any other of the other Loan Documents, including, without limitation, any certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, insurance policy or title insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

5.    **FURTHER ASSURANCES**.

5.1    Recording of Mortgage, etc. Borrower shall and hereby agrees to, upon the execution and delivery of this Mortgage, and from time to time after the Mortgage Date, cause this Mortgage and any other of the Loan Documents creating or evidencing the liens and other Liens upon the Mortgaged Property, and each instrument of further assurance herein or therein provided or contemplated (or otherwise required by Lender), to be filed, registered or recorded in such manner and in such places as may be required by any present or future Requirements of Law in order to publish notice of, and to fully protect and perfect the liens and other Liens of the Loan Documents upon, and the interest of Lender in, the Mortgaged Property and all components thereof (including, without limitation, the Collateral). Borrower shall and hereby agrees to pay any and all taxes, filing, registration and/or recording fees, and any and all reasonable Costs and Expenses incident to the preparation, execution, acknowledgment, recording and/or filing of this Mortgage, any other of the Loan Documents, any note, deed of trust or mortgage supplemental hereto, any other security instrument or document with respect to the Mortgaged Property, and/or any instrument of further assurance, and any modification, amendment, continuation and/or restatement of or to any one or more of the the foregoing documents, and all Governmental Charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust or mortgage supplemental hereto, any other security instrument or document with respect to the Mortgaged Property, and/or any instrument of further assurance, and any modification, amendment, continuation and/or restatement of or to any one or more of the the foregoing documents, except where prohibited by applicable law to do so.

5.2    Further Acts, etc. Borrower shall and hereby agrees to, at the sole but reasonable Cost and Expense of Borrower, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, deeded, granted,

bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Requirements of Law. Borrower, upon written demand, will execute and deliver, and in the event it shall fail to so execute and deliver within five (5) Business Days after such written demand, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Mortgaged Property.  Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including, without limitation, such rights and remedies available to Lender pursuant to this <u>Section 5.2</u>.  The foregoing power of attorney specified in this <u>Section 5.2</u> shall terminate upon the payment and performance, and indefeasible satisfaction and discharge, in full, of the Mortgage Debt and all Obligations.

       5.3    <u>Severing of Mortgage</u>.  This Mortgage and the Note may, at any time until the same shall be fully paid and satisfied, at the sole election of Lender, be severed into two or more notes and two or more security instruments in such denominations as Lender shall determine in its sole discretion, each of which shall cover all or a portion of the Mortgaged Property to be more particularly described therein.  To that end, Borrower, upon written request of Lender, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then-current owner of the Mortgaged Property, to Lender and/or its designee or designees, substitute notes and security instruments in such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses similar to those contained herein and in the Note, and such other documents and instruments as may be required by Lender.

       5.4    <u>Replacement Documents</u>.  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

6.    **TRANSFER**.  Except (i) as otherwise expressly consented to in a writing signed by an officer of Lender, or otherwise expressly set forth in any applicable provisions of the Loan Agreement (including Section 5.5 therein) or any other of the Loan Documents (and expressly subject to the terms and conditions of any such applicable provisions), if the legal or beneficial ownership of the Mortgaged Property, or any part thereof, becomes vested in anyone other than Borrower, the whole sum of principal and interest then remaining unpaid in respect of the Mortgage Debt shall become immediately due and payable (in immediately available USD) without notice at the option of Lender, and Lender may, without notice to Borrower, deal with such successors in interest with reference to the Mortgage and the Mortgage Debt hereby secured, and in the same manner as with Borrower, without in any way altering or discharging Borrower's liability hereunder, upon and/or in connection with the Mortgage Debt and/or the Obligations.  Borrower agrees that upon any such transfer, Borrower shall remain jointly, severally and permanently liable for the Mortgage Debt, and Borrower hereby expressly waives any defense available to sureties and consents to the exchange or release of any Collateral, extensions for time of payment, the release of one or more Person(s) liable for the Mortgage Debt, and to changes in the amount of the Mortgage Debt, the terms of payment and/or the interest rate(s) applicable thereto, and expressly agrees that all or any such events to which such consent is herein given may occur on one or more occasions.

7.    **DEFAULT**.  This Mortgage is on the STATUTORY CONDITION and upon the further condition that there shall not exist and be continuing (beyond the expiration of any applicable notice,

815600.1               

grace or cure period) any "default" or "Event of Default" (howsoever such terms may be used or defined) under the Loan Agreement, the Note or any other of the Loan Documents, the occurrence and continuance of any of which shall constitute (i) an "**Event of Default**" hereunder, and (ii) a "default" or an "Event of Default" (howsoever such terms may be used or defined) under all of the Loan Documents (irrespective of whether any such Loan Documents shall so state).

## 8.    **RIGHTS AND REMEDIES OF LENDER**.

8.1    Remedies.  Upon and during the occurrence and continuance of any Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), Borrower hereby agrees that Lender may take such action, without notice or demand, to the fullest extent permitted by applicable law, as it deems advisable to protect and enforce its cumulative rights and remedies against Borrower and in and to the Mortgaged Property, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting any other of the cumulative rights and remedies of Lender:

8.1.1    declare the entire unpaid Mortgage Debt to be immediately due and payable;

8.1.2    institute proceedings, judicial or otherwise, for the complete foreclosure of the lien of this Mortgage in the manner provided by law, including, without limitation, the STATUTORY POWER OF SALE and the exercise of all rights of a secured party under the UCC, in which case the Mortgaged Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner, and Lender may become the purchaser of the Mortgaged Property at any foreclosure sale where it is the highest bidder;

8.1.3    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Mortgage Debt then due and payable, subject to the continuing lien and other Liens created by this Mortgage for the balance of the Mortgage Debt and the Obligations not then due, unimpaired and without loss of priority;

8.1.4    sell for cash or upon credit the Mortgaged Property, and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels or parts thereof, at such time and place, upon such terms and after such notice thereof as may be required or permitted by applicable law; and, without limiting the foregoing:

(a)    in connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Mortgaged Property which consists of (i) a right in action, (ii) property that can be severed from the Real Property covered hereby, or (iii) any improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property.  Where the Mortgaged Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

(b)    Lender shall be entitled to elect to proceed against any or all of the Real

Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender;

(c)     should Lender elect to sell any portion of the Mortgaged Property which is Real Property or which is Personal Property, Equipment or Fixtures that Lender has elected under applicable law to sell together with Real Property in accordance with applicable law governing a sale of the Real Property, Lender shall give such notice of the occurrence and continuance of an Event of Default, if any, and its election to sell such Property as may then be required by law.  Thereafter, upon the giving of such notice of sale and the expiration of any required time period as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower or Lender at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in USD.   Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale; and

(d)     if the Mortgaged Property consists of several lots, parcels or items of property, Lender may at its option (exercisable in its sole discretion, but subject to applicable law), (i) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (ii) elect to sell such lots, parcels or items through a single sale, or through two (2) or more successive sales, or in any other manner Lender designates. Any Person, including, without limitation, Borrower or Lender, may purchase at any sale hereunder.  Should Lender desire that more than one (1) sale or other disposition of any Mortgaged Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the lien of this Mortgage on any part of the Mortgaged Property not sold until all the Obligations have been indefeasibly satisfied and discharged in full.  In the event Lender elects to dispose of the Mortgaged Property through more than one (1) sale, except as otherwise provided by applicable law, Borrower shall and hereby agrees to pay any and all Costs and Expenses of each such sale and of any judicial proceedings wherein any such sale may be made;

8.1.5     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or any other of the Loan Documents;

8.1.6     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

8.1.7     apply for the appointment of a receiver, trustee, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Mortgage Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the

Loan or any Person otherwise liable for the payment of the Mortgage Debt or any part of the Obligations;

8.1.8    exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral; and (ii) request that Borrower, at Borrower's sole Cost and Expense, assemble the Collateral and make the same available to Lender at a convenient place acceptable to Lender.  Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower;

8.1.9    apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Mortgage or any other of the Loan Documents to the payment of the following items in any order in its sole discretion: (i) Taxes and Other Charges; (ii) insurance premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note; and/or (v) all other sums payable pursuant to the Note, the Loan Agreement, this Mortgage and/or any other of the other Loan Documents, including, without limitation, any "Prepayment Fees" (as such term is defined under the Note and incorporated herein by this reference), if applicable, and advances made by Lender pursuant to the terms of this Mortgage, the Note, the Loan Agreement and/or any other of the Loan Documents; or

8.1.10    pursue such other remedies as Lender may have under applicable law.

8.2    <u>Sale of Less Than all of the Mortgaged Property</u>.  In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Mortgaged Property unimpaired and without loss of priority.

8.3    <u>Application of Proceeds</u>.  The purchase money, proceeds and avails of any disposition of the Mortgaged Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Mortgage or the other Loan Documents, may be applied by Lender to the payment of the Mortgage Debt in such priority and proportions as Lender in its discretion shall deem proper, except as any such Loan Documents may expressly otherwise provide.

8.4    <u>Right to Cure Defaults</u>.  Upon the occurrence and during the continuance of any Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any of the Obligations, make any payment or do any act required of Borrower hereunder or under any other of the Loan Documents with respect to any Obligations which payment or action on the part of Lender shall be in such manner and to such extent as Lender may deem advisable (in its sole but reasonable discretion) to protect the security hereof.  Lender is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or to collect the Mortgage Debt, and the Cost and Expense thereof (including reasonable attorneys' fees and other reasonable Costs and Expenses to the maximum extent permitted by applicable law), with interest at the Default Rate (hereinafter defined), shall constitute a portion of the Mortgage Debt and shall be due and payable to Lender upon written demand.  All reasonable attorneys' fees and other reasonable Costs and Expenses incurred by Lender in remedying any Event of Default (which is continuing beyond the expiration of any applicable notice, grace or cure period), or in appearing in, defending or bringing any such action or proceeding, as hereinabove provided or otherwise under any other of the provisions of any of the Loan Documents, shall bear interest at the "Default Rate" (as such term is defined in the Note and incorporated herein by this reference; the "**<u>Default Rate</u>**") for the period beginning on the first (1st) day after written

notice from Lender that such Costs and Expenses were incurred until the date of payment of the same, in full, to Lender. All such reasonable Costs and Expenses incurred by Lender, together with interest thereon calculated at the Default Rate (as specified in the immediately preceding sentence), shall be deemed to constitute a portion of the Mortgage Debt and to be secured by this Mortgage and the other Loan Documents, and shall be immediately due and payable upon written demand by Lender therefor in immediately available USD.

8.5     Actions and Proceedings. Lender has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its sole and absolute discretion, decides should be brought to protect its interest in the Mortgaged Property.

8.6     Recovery of Sums Required To Be Paid. Lender shall have the right, from time to time, to take action to recover any sum or sums which constitute a part of the Mortgage Debt as the same become due, without regard to whether or not the balance of the Mortgage Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for any Event of Default existing and continuing (beyond the expiration of any applicable notice, grace or cure period) at the time such earlier action was commenced. Lender may, regardless of the adequacy of, and without being required to first look to, anything by which the Mortgage Debt is secured, setoff against any deposit or other sum that may from time to time be credited by or due from Lender to Borrower and apply the same toward the satisfaction of Mortgage Debt.

8.7     Examination of Books and Records. During normal business hours and upon reasonable prior notice to Borrower (which may be given verbally), Lender, its agents, representatives, accountants and attorneys shall have the right, at Borrower's sole Cost and Expense, to (i) examine and audit at the Mortgaged Property, at any office(s) of Borrower and/or at any other location(s) where the books and records that reflect upon Borrower's financial condition, and/or the income, expenses and operation of the Mortgaged Property, are maintained or located, any and all such books, records and other papers; and (ii) make copies and extracts from any such books, records and other papers. This Section 8.7 shall apply until the Mortgage Debt has been paid and indefeasibly satisfied and discharged, in full, without regard to whether an Event of Default has occurred or is continuing.

8.8     Other Rights, etc.

8.8.1     The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Borrower shall not be relieved of the Obligations by reason of: (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Mortgage, or otherwise to enforce any of the provisions this Mortgage or any other of the Loan Documents; (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any Person liable for the Obligations or any portion thereof; or (iii) any agreement or stipulation by Lender extending the time of payment, or otherwise modifying or supplementing the terms of the Note, this Mortgage or any other of the Loan Documents.

8.8.2     Borrower expressly acknowledges and agrees that the risk of loss or damage to the Mortgaged Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Mortgaged Property, for failure to maintain any policies of insurance, or for failure to determine whether any insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Mortgaged Property or collateral not in Lender's possession.

8.8.3     Lender may resort for the payment and performance of the Mortgage Debt and

the Obligations to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Mortgage Debt, or any portion thereof, or to enforce the Obligations or any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Mortgage. The rights of Lender under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded under any of the Loan Documents, at law and/or in equity.

8.9    <u>Right to Release Any Portion of the Mortgaged Property</u>.   Lender may release any portion of the Mortgaged Property for such consideration as Lender may require without, as to the remainder of the Mortgaged Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Mortgage Debt shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and Lender may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Mortgage shall continue as a lien and security interest in the remaining portion of the Mortgaged Property.

8.10    <u>Violation of Laws</u>.   If the Mortgaged Property is not in full compliance with any Requirements of Law, Lender may impose additional requirements upon Borrower in connection therewith and herewith, including, without limitation, monetary reserves or financial equivalents.

8.11    <u>Right of Entry</u>.   Upon reasonable prior notice to Borrower (which may be given verbally), Lender and its agents shall have the right to enter and inspect all or any portion of the Mortgaged Property at all reasonable times (subject to any then-applicable provisions of Tenant's Lease with respect to safety and security procedures).

8.12    <u>Lender Not Obligated; Cumulative Rights</u>.   Nothing in this instrument shall be construed as obligating Lender to take any action or incur any liability with respect to the Mortgaged Property, and all options given to Lender are for its benefit and shall and may be exercised in such order and in such combination as Lender in its sole discretion may from time to time decide. Each remedy is distinct and cumulative to all other rights and remedies under this Mortgage and the Loan Documents or afforded by law and/or in equity, and may be exercised concurrently, independently or successively, in any order whatsoever.

9.    **WAIVERS**.

9.1    <u>Marshaling and Other Matters</u>.   To the maximum extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, to the maximum extent permitted by applicable law, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Mortgaged Property subsequent to Mortgage Date.

9.2    <u>Waiver of Jury Trial</u>.   **BORROWER, WITH AND UPON THE ADVICE OF INDEPENDENT AND COMPETENT LEGAL COUNSEL OF ITS CHOOSING, HEREBY KNOWINGLY, VOLUNTARILY AND EXPRESSLY (I) WAIVES ITS RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING (WHETHER BY CLAIM OR COUNTERCLAIM) BROUGHT OR INSTITUTED BY ANY PARTY TO THIS**

MORTGAGE, ANY GUARANTOR OF ALL OR ANY PART OF THE MORTGAGE DEBT, OR ANY OF THE RESPECTIVE HEIRS, AFFILIATES, LEGAL REPRESENTATIVES, BENEFICIARIES, SUCCESSORS AND/OR ASSIGNS OF THE FOREGOING, WHICH RELATES DIRECTLY OR INDIRECTLY TO THE MORTGAGE DEBT, THE MORTGAGED PROPERTY, THE COLLATERAL, THIS MORTGAGE, THE NOTE, ANY OTHER OF THE LOAN DOCUMENTS AND/OR THE RELATIONSHIP BETWEEN OR AMONG LENDER, BORROWER AND/OR ANY OF THEIR RESPECTIVE AFFILIATES; AND (II) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED.

10.    **APPLICABLE LAW**.

     10.1    <u>Governing Law</u>.  This Mortgage will be governed and construed in accordance with the laws of the Commonwealth of Massachusetts (without regard to conflict of law provisions thereof).  All provisions of the Loan Agreement incorporated herein by reference shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts.

     10.2    <u>Provisions Subject to Applicable Law</u>.  All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law.

11.    **MISCELLANEOUS PROVISIONS**.

     11.1    <u>Notices</u>.  All notices, demands and other communications made under or pursuant to this Mortgage shall, unless otherwise expressly provided herein, be made in writing and shall be deemed given when (i) sent by registered or certified mail (postage prepaid, return receipt requested), or delivered in person or by a nationally-recognized overnight courier (prepaid, with delivery confirmation), and (ii) addressed as follows:

| If to Borrower: | If to Lender: |
|---|---|
| THG PROPERTIES LLC | AVIDIA BANK |
| 386 Commercial Street | 42 Main Street |
| Provincetown, MA  02657 | Hudson, MA  01749 |
| Attn:    James D. DeRosier | Attn:    Andrew Miller, Senior Vice President |
| *with a copy (which shall not constitute notice) to*: | *with a copy (which shall not constitute notice) to*: |
| LESTER J. MURPHY JR., ESQUIRE | DAVIS, MALM & D'AGOSTINE, P.C. |
| 1380 Route 134, PO Box 1388 | One Boston Place, 37th Floor |
| East Dennis, MA  02641 | Boston, Massachusetts  01208 |
|  | Attn:    Devon A. Kinnard, Esquire |

     11.1.1  Any party may change the address to which notices, demands or other communications are to be sent to such party by giving written notice of such change of address to each other party in the manner provided by <u>Section 11.1</u>.  Any such change of address notice shall be deemed given when transmitted in accordance with <u>Section 11.1</u>.

     11.2    <u>No Oral Change</u>.  This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

11.3   <u>Successors and Assigns</u>.  This Mortgage shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective successors and permitted assigns, as set forth in the Loan Agreement.  Lender shall have the right to assign or transfer its rights under this Mortgage in connection with any assignment of the Loan and the Loan Documents.  Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Mortgage.  Borrower shall not have the right to assign or transfer its rights or obligations under this Mortgage without the express prior written consent of Lender, except as may be otherwise provided in the Loan Agreement (and then in express accordance with applicable terms and conditions thereof), and any attempted assignment without such express prior written consent shall be null and void.

11.4   <u>Severability</u>.  If any term of this Mortgage shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall in no way be affected thereby, and this Mortgage shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included herein.

11.5   <u>Captions, Headings, Ambiguity, etc</u>.  The captions and headings in this Mortgage are for convenience only and in no way define or describe the scope or content of any provision of this Mortgage.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in the singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein", the word "Lender" shall mean "Lender and any subsequent holder of the Note", the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage", the word "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein, and the phrases "attorneys' fees", "legal fees", "counsel fees", "fees, costs and expenses of legal counsel" and phrases of like or similar import, whether appearing herein or in any other Loan Documents, shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, without limitation, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Mortgaged Property (including, without limitation, any Collateral), the Leases and the Rents and enforcing its rights hereunder or under any other of the Loan Documents.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms and the singular form of nouns and pronouns shall include the plural and vice versa.  Borrower hereby acknowledges that Borrower, Lender and their respective legal counsel have reviewed and negotiated this Mortgage, and agrees that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Mortgage or any other of the Loan Documents.  As used herein, the term "**and/or**" means one or the other or both, or any one or more or all, of the things or Persons in connection with which the conjunction is used.

11.6   <u>Subrogation</u>.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the payment and performance, and indefeasible satisfaction and discharge, in full, of the Mortgage Debt and all Obligations.

11.7   <u>Entire Agreement</u>.  The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto.  Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and

the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

11.8    Limitation on Lender's Responsibility.  No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Mortgaged Property by the tenants or any other Person, or for any dangerous or defective condition of the Mortgaged Property, or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.  Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession".

11.9    Principles of Construction.  In the event of any inconsistencies between the terms and conditions of this Mortgage and the terms and conditions of the Loan Agreement, the terms and conditions of the Loan Agreement shall control and be binding.

11.10    Relationship of Borrower and Lender; No Partnership or Joint Venture.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of the Loan Agreement, the Note, this Mortgage or any other Loan Document shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.  No provision of this Mortgage or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Borrower and Lender.

11.11    No Merger.  So long as the Obligations owed to Lender secured hereby remain unpaid and undischarged and unless Lender otherwise consents in writing, the fee, leasehold, subleasehold and sub-subleasehold estates in and to the Mortgaged Property will not merge but will always remain separate and distinct, notwithstanding the union of such estates (without implying Borrower's consent to such union) either in Borrower, Lender, any tenant or any third party by purchase or otherwise, in the event this Mortgage is originally placed on a leasehold estate and Borrower later obtains fee title to the Mortgaged Property, such fee title will be subject and subordinate to this Mortgage.

12.    **STATE-SPECIFIC PROVISIONS**.

12.1    Principles of Construction.  In the event of any inconsistencies between the terms and conditions of this Section 12 and the terms and conditions of this Mortgage, the terms and conditions of this Section 12 shall control and be binding.

12.2    Mortgage Covenants.  Borrower hereby grants to Lender the Mortgaged Property WITH MORTGAGE COVENANTS.

12.3    Statutory Condition.  This Mortgage is upon the STATUTORY CONDITION and the further condition that all covenants, agreements and obligations of Borrower contained herein or in any other instrument or statement given by Borrower to Lender in connection with the Mortgage Debt and/or the Obligations shall be kept and fully performed, for any breach of which Lender shall have the STATUTORY POWER OF SALE.  In connection therewith:

12.3.1    Lender may institute proceedings for the complete or partial foreclosure of this Mortgage by exercising the STATUTORY POWER OF SALE, as adopted under the laws of the Commonwealth of Massachusetts, which is incorporated herein by reference, in which case the Mortgaged Property may be sold for cash or upon credit in one or more parcels, at one or more sales, at such time and place, upon such terms and after such notice thereof as may be required or permitted by

law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of or estate in the Mortgaged Property. Lender may postpone sale of all or any portion of the Mortgaged Property by announcement at the time and place of sale, and, from time to time thereafter, may further postpone such sale by announcement at the time and place fixed at the preceding postponement. Lender shall deliver to the purchaser its deed or other appropriate instrument transferring title to the Mortgaged Property, or the interest therein so sold, but without any covenant or warranty, express or implied;

12.3.2  Borrower authorizes Lender at its option to foreclose this Mortgage subject to the rights of any tenants of the Mortgaged Property, and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be asserted by Borrower as a defense to any proceedings instituted by Lender to recover the Obligations or any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Property. Lender or any of its Affiliates may be a purchaser of the Mortgaged Property or any part thereof or of any interest therein at any sale thereof, whether pursuant to foreclosure or otherwise hereunder. Any purchaser at a foreclosure sale hereunder shall, upon any such purchase, acquire good title to the Mortgaged Property free of all rights of redemption in Borrower. So long as any amount secured hereby, or any part thereof, remains unpaid, Borrower agrees that possession of the Mortgaged Property by Borrower, or any Person claiming under Borrower, shall be as tenant under Lender, and, in case of a foreclosure of this Mortgage, Borrower and any Person in possession under Borrower shall, at the option of Lender (or such other Person as may be the owner of the Mortgaged Property following a foreclosure of this Mortgage), then become and be tenants holding over, and shall forthwith deliver possession to such purchaser, or be summarily dispossessed in accordance with the laws applicable to tenants holding over;

12.3.3  Borrower shall fully cooperate with Lender in any foreclosure of the Mortgaged Property scheduled by Lender, including without limitation; (i) providing Lender with any information concerning the Mortgaged Property reasonably requested by Lender, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Mortgaged Property; (ii) arranging with Lender two (2) preview dates, each three (3) hours in length, prior to the dates of any foreclosure sale; and (iii) granting Lender unlimited access to the Mortgaged Property on the date of the foreclosure sale for one (1) hour before and one (1) hour after the foreclosure sale. In addition, Borrower shall, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Mortgaged Property scheduled by Lender; and

12.3.4  Lender shall also have the option to proceed with foreclosure in satisfaction of any installments of the Obligations which have not been paid when due, conducting the sale as herein provided and without declaring the entire principal balance and accrued interest due; such sale may be made subject to the unmatured portion of the Obligations, and any such sale shall not in any manner affect the unmatured portion of the Obligations, but as to such unmatured portion of the Obligations this Mortgage shall remain in full force and effect just as though no sale had been made hereunder. It is further agreed that several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Obligations, it being the purpose hereof to provide for a foreclosure and sale of the security for any matured portion of the Obligations without exhausting the power to foreclose and sell the Mortgaged Property for any subsequently maturing portion of the Obligations.

*[Remainder of Page Intentionally Left Blank;*
*Signature Page, Jurat & Exhibit Follow]*

**IN WITNESS WHEREOF**, Borrower has caused this Mortgage to be executed and delivered by its duly authorized signatory as an instrument under seal as of the Effective Date.

*BORROWER*:

**THG PROPERTIES LLC**

*Witness to Borrower's Signature:*

Witness Signature

Witness Name: GEORGE A. HEWETT, ESQ.
DAVIS, MALM & D'AGOSTINE, P.C.
One Boston Place
Boston, MA 02108

By: _____
Name: James DeRosier
Title: Manager

THE COMMONWEALTH OF MASSACHUSETTS

Barnstable , ss.

On this 31st day of March, 2017, before me, the undersigned notary public, personally appeared JAMES DEROSIER, in his capacity as Manager of **THG PROPERTIES LLC** who proved to me through satisfactory evidence of identification, which was ☒ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person whose name is signed on the preceding document, and who acknowledged to me that he signed it voluntarily for its stated purpose, in such capacity as Manager of **THG PROPERTIES LLC**.

*(Notarial Seal)*

Notary Public: _____
Printed Name: George A. Hewett
My Commission Expires: Jan 14, 2022

SIGNATURE PAGE TO:
MORTGAGE AND SECURITY AGREEMENT
(INCLUDING ASSIGNMENT OF LEASES AND RENTS) (PERMANENT)
AVIDIA BANK
THG PROPERTIES LLC

815600.1

## EXHIBIT A
### LEGAL DESCRIPTION

The land in Provincetown, Barnstable County, Massachusetts, together with the buildings thereon known as 386, 392 and 392A Commercial Street and bounded and described as follows:

**PARCEL I**

Commencing at the S.E. corner of the premises by land now or formerly of Obadiah Snow, deceased; thence running South 67°, West sixty-nine feet and three Inches (69' 3") or thereabouts to the land now or formerly of William Hedge, deceased; thence by land of said Hedge, North 22° , West sixty-two feet and six inches (62' 6"); thence North 77°, East by land now or formerly of Stephen Cook, deceased, and estate of Lydia Atkins, sixty-eight feet (68'); thence South 22°, East by land now or formerly of William H. Law, deceased, sixty-three feet and eight inches (63' 8") to the first mentioned bound, with a Four foot (4') passage way from the house to the sidewalk.

**PARCEL II**

Commencing at the South West corner of the premises at a stake on the County Road on the South East side of a four foot (4') passageway; hence the line runs North Westerly sixty-four feet (64') by said pass-way to a stake at the land now or formerly of Louisa J. Lavender.  Thence turning and running North Easterly by land of said Lavender thirty-two feet and four inches (32' 4") to a post at the land now or formerly of Elizabeth Bannister Smith; thence turning and running Southeasterly by land of said Smith sixty-two feet and three inches (62' 3") to the County Road; thence turning and running South Westerly by said County Road thirty-three feet (33') + or – to the point of beginning.

**PARCEL III**

Beginning at a stake on Commercial Street at the South West corner of the premises by land formerly of James Cook, and now or formerly owned by Ruth S. Conwell; thence the line runs North Westerly by land of said Conwell sixty-five feet (65') to a post at land of Louisa J. Lavender; thence turning and running North Easterly by land of said Lavender thirty-two feet and nine inches (32' 9") to a post; thence turning and running southeasterly by a four foot (4') passageway sixty-four feet (64') to the County Road, or Commercial Street, thence turning and running South Westerly by Commercial Street, thirty-two feet and nine inches (32' 9") to the first mentioned bound, with a privilege of a four foot (4') passageway on the North Easterly side from the County Road in a North Westerly direction as far as said land extends in that direction.

**BARNSTABLE REGISTRY OF DEEDS**
**John F. Meade, Register**

Property Address:  386 Commercial Street, Provincetown, Massachusetts 02657

## PROMISSORY NOTE
(INTERIM)

**$1,125,000.00**                                    Provincetown, Massachusetts
March 31, 2017

FOR VALUE RECEIVED, **THG PROPERTIES LLC**, a Massachusetts limited liability company having a principal place of business at 386 Commercial Street, Provincetown, Massachusetts 02657 (collectively with its successors and/or permitted assigns, "**Borrower**"), as of the date first set forth above (the "**Note Date**"), hereby promises to pay to

### AVIDIA BANK,

a Massachusetts-chartered savings bank (collectively with its successors and/or assigns, "**Lender**"), OR ORDER, at Lender's principal place of business located at 42 Main Street, Hudson, Massachusetts 01749-0190 (or such other office of Lender as Lender may from time to time direct), the principal sum of

ONE MILLION ONE HUNDRED TWENTY-FIVE THOUSAND AND 00/100 DOLLARS (**$1,125,000.00**)

(or so much thereof as may be advanced and outstanding from time to time) together with interest on the unpaid principal until paid at the rate and in the manner hereinafter provided. Any and all payments made in connection with this Promissory Note (INTERIM) (as amended, restated, supplemented and/or otherwise modified from time to time, this "**Note**") shall be made in lawful money of the United States of America in immediately available funds, without counterclaim or setoff and free and clear of, and without any deduction or withholding for, any taxes or other payments.

This Note is issued in conjunction with a certain Loan Agreement (CONSTRUCTION) dated as of the Note Date by and between Borrower and Lender, all of the terms and conditions of which are incorporated herein by this reference (as amended, restated, supplemented and/or otherwise modified from time to time, the "**Loan Agreement**"). This Note evidences advances of the proceeds of the Interim Loan made by Lender to or for the benefit of Borrower under and pursuant to the terms and conditions of the Loan Agreement.

1.      **DEFINITIONS**.  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms as set forth in the Loan Agreement, and such terms are incorporated herein by this reference.  For purposes of this Note, in addition to any other terms defined herein (or otherwise incorporated herein by reference), the below-listed terms shall have the following meanings:

1.1      "**Business Day(s)**" means any day other than a Saturday, a Sunday or any other day which shall be in The Commonwealth of Massachusetts ("**Massachusetts**") a day on which commercial banking institutions are authorized or required by applicable law or executive order to be closed for business.

1.2      "**Maturity Date**" means that certain date occurring no later than the second (2nd) anniversary of the Note Date.

1.3      "**Prime Rate**" means the so-called "Prime Rate" as published from time to time in *The Wall Street Journal* (Eastern Edition; available online as of the Note Date at: http://online.wsj.com/mdc); or, if not so published, and at Lender's option, by any other commercially available source or publication from time to time providing quotations of (i) such rate, (ii) any such successor rate, or (iii) commercially reasonable comparable index or reference rate, in each case as determined and/or selected by Lender in its sole but reasonable discretion and in commercial good faith.

815348.v1



2.      **INTEREST**.

2.1      Note Rate.  Subject to the terms and conditions of this Note and all other of the Loan Documents, and absent the occurrence of an Event of Default (hereinafter defined) which is continuing or Lender's sooner demand hereon, the advanced and unpaid principal of this Note from time to time outstanding shall bear interest at a *fluctuating* rate per month (the **"Note Rate"**) equal to the aggregate sum of (i) the Prime Rate, *plus* (ii) two hundred fifty (250) basis points (fully floating), computed on the basis of the actual number of days elapsed over a year assumed to have 360 days; provided that interest shall be due for the actual number of days elapsed during each period for which interest is being charged.

2.1.1    In the event the Note Date is not a Business Day, then, for purposes of calculating the above Note Rate as published on the Business Day immediately preceding the respective Note Date shall be used and included in such calculation.

2.1.2    Borrower hereby expressly acknowledges and agrees that the Note Rate from time to time charged hereunder may not be the best, lowest and/or favored rate of interest charged by Lender to borrowers other than Borrower, and any representation or warranty in that regard is hereby expressly disclaimed.

2.2      Default Rate.  Overdue payments of principal (whether at stated maturity, by acceleration or otherwise) hereunder, and, to the maximum extent permitted by applicable law, overdue interest, shall be due and payable immediately upon demand therefor and, until paid in full, shall bear interest at a rate per annum equal to four percent (4.00%) above the Note Rate (the **"Default Rate"**); *provided, however,* that if such interest exceeds the maximum amount permitted to be paid under applicable law, then such interest shall be reduced to such maximum permitted amount (and any such excess interest so paid shall be applied) in accordance with the provisions of the Section entitled *"Usury"* contained in the Loan Agreement.

3.      **PAYMENTS**.

3.1      Payments.  Subject to the terms and conditions of this Note and all other of the Loan Documents, Borrower hereby agrees that:

3.1.1    from and after the Note Date, and on the same day of each month thereafter, payments of interest only at the Note Rate on the unpaid principal hereof shall be due and payable by Borrower monthly in arrears, commencing one (1) month from the Note Date, and on the same day of each month thereafter until (and including) the Maturity Date; and

3.1.2    all principal, interest and other indebtedness due hereunder, if not sooner paid (whether by voluntary or involuntary prepayment, acceleration or otherwise), shall in all events be due and payable without further notice or demand on the Maturity Date.

3.2      Adjustment of Certain Payments.  Borrower hereby acknowledges and agrees that if this Note or any payment hereunder becomes due on a day which is not a Business Day, the due date of this Note or such payment shall be extended to the next succeeding Business Day, and such extension of time shall be included in computing interest and fees in connection with such payment.

3.3      Application of Payments.  Prior to the occurrence of an Event of Default (hereinafter defined), the order of application of all payments received from Borrower hereunder shall be as follows: (i) to unpaid late charges, costs of collection and other unpaid amounts due hereunder and/or under any other of the Loan Documents (other than principal or interest); (ii) to interest on the unpaid balance of this Note; and (iii) to the unpaid principal of this Note. After the occurrence of an Event of Default, Lender shall apply any payments received from Borrower in such order as Lender may elect in its sole discretion.



3.4     Late Charges. If any payment of principal or interest (or both, as the case may be) due hereunder is not made within ten (10) days after its due date, Borrower hereby promises to pay in addition thereto a late charge equal to five percent (5.00%) of the amount of such payment as liquidated compensation to Lender for the extra expense of Lender to process and administer the late payment; Borrower hereby agreeing that any other measure of compensation for a late payment is speculative and impossible to compute. This provision for late charges shall not be deemed to extend the time for payment or be a "grace period" or "cure period" that gives Borrower a right to cure an Event of Default. Imposition of late charges is not contingent upon the giving of any notice or lapse of any cure period provided for in any of the Loan Documents, and shall not be deemed a waiver of any right or remedy of Lender including, without limitation, acceleration of and demand on this Note. Borrower hereby acknowledges and agrees that any such late charges are not interest and shall not be subject to refund or rebate, nor shall they be credited against any other amount(s) due hereunder or under any other of the Loan Documents.

4.     **PREPAYMENT**. Borrower shall have the privilege of prepaying the principal amount of this Note, in whole or in part, without premium or penalty (in each instance, a "**Prepayment**"); *provided, however*, that in the event Borrower desires to make any Prepayment, Borrower shall in each instance give Lender not less than fifteen (15) days' prior written notice of its intention to make such Prepayment (each, a "**Prepayment Notice**"), which such Prepayment Notice shall specify the amount of the desired Prepayment and the date upon which Borrower will make such Prepayment (which shall in all events be a Business Day); and *provided further* that, upon the date so specified in such Prepayment Notice, Borrower shall pay to Lender the amount of the Prepayment specified in such Prepayment Notice together with all unpaid interest on the then-outstanding principal balance of this Note accrued through such date.

5.     **DEFAULT; OTHER DOCUMENTS; SECURITY; REMEDIES**.

5.1     This Note is (i) issued in conjunction with the Loan Agreement; and (ii) secured by, *inter alia*, the Mortgages and the Security Agreement (collectively, the "**Security Instruments**"). No reference to the Loan Agreement or the Security Instruments, nor to any provisions thereof, shall affect or impair the absolute and unconditional obligation of Borrower to pay the principal of and interest on this Note as herein provided. Borrower acknowledges and agrees that the occurrence of an "Event of Default" under the Loan Agreement (as such term is defined therein) shall also constitute an "**Event of Default**" hereunder and a "default" or "Event of Default" (howsoever such terms may be used or defined) under all other of the Loan Documents.

5.2     At Lender's option at any time after the occurrence of an Event of Default which is continuing, Lender may demand immediate repayment of all outstanding indebtedness under this Note and declare all Obligations immediately due and payable without further action of any kind (including, without limitation, presentment, protest or other notice of dishonor of any kind, all of which are hereby expressly waived by Borrower). No course of dealing or delay in accelerating the maturity of this Note, or in taking any other action with respect to any Event(s) of Default, shall affect rights later to take such action with respect thereto, and no waiver as to any one Event of Default shall affect rights as to any other Events of Default.

5.3     Any and all deposits or other sums at any time credited by or due from Lender to Borrower or any endorser hereof, and any and all securities or other property of any such Person at any time in the possession or custody of, or in transit to, Lender and/or any Affiliate thereof, may at all times be held and treated as collateral security for the payment of this Note and any and all other liabilities or obligations (whether direct or indirect, absolute or contingent, sole, joint or several, secured or unsecured, due or to become due, now existing or hereafter arising) of any such Person to Lender; and each such Person hereby expressly (i) grants to Lender a security interest in, and right of setoff against, all of the same; and (ii) acknowledges and agrees that, at any time, without demand or notice, Lender may set-off



against the same or any part thereof and apply the same to any such liabilities or obligations even though unmatured, and regardless of the adequacy of any other collateral or security for the repayment of this Note or any other of the Obligations. BORROWER KNOWINGLY AND VOLUNTARILY HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL OR SECURITY WHICH SECURES THIS NOTE PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS, SECURITIES AND/OR OTHER PROPERTY OF BORROWER OR ANY GUARANTOR AND/OR ENDORSER HEREOF.

5.4     Lender shall not be required to marshal any present or future security for, or guarantees of, the Obligations or to resort to any such security or guaranty in any particular order and each of Borrower and any guarantor and/or endorser hereof hereby waives, to the fullest extent that each can lawfully do so, (i) any right they might have to require Lender to pursue any particular remedy before proceeding against them, and (ii) any right to the benefit of, or to direct the application of, the proceeds of any collateral or security for the indebtedness evidenced by this Note (or any other of the Obligations) until all Obligations are paid and performed, and indefeasibly satisfied and discharged, in full.

6.     **CERTAIN WAIVERS**.

6.1     Borrower and each surety, guarantor, endorser and/or any other Person now or hereafter liable for the payment of all or any part of the indebtedness evidenced by this Note hereby (i) severally agree, by making, endorsing or guaranteeing this Note, or by making any agreements to pay all or any part of the indebtedness evidenced by this Note, to waive presentment for payment, protest and demand, notice of protest, demand and of dishonor and nonpayment of this Note, and (ii) voluntarily and expressly consent, on one or more occasions, without notice or further assent to: (a) the substitution, exchange and/or release of any security or collateral securing this Note, or any part thereof, at any time; (b) the acceptance or release by Lender at any time of any additional collateral or security for, or of any other Persons directly or indirectly liable for the indebtedness evidenced by, this Note; (c) the modification or amendment at any time or times, of this Note, the Loan Agreement, any other of the Loan Documents and/or any other instrument(s) or document(s) from time to time securing this Note or the repayment hereof at the request of any Person liable hereon; (d) the granting by Lender of any extension of the time for payment of this Note, or for the performance of the agreements, covenants and conditions contained in this Note, in the Loan Agreement, in any other of the Loan Documents and/or in any other instrument(s) from time to time securing this Note or the repayment hereof, at the request of any Person liable hereon; and (e) any and all forbearances and indulgences whatsoever. The consents set forth above in this Section shall not alter or diminish the liability of any such Persons.

6.2     **EXCEPT AS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH OF BORROWER AND LENDER (EACH INDIVIDUALLY, A "PARTY") HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ANY RIGHT SUCH PARTY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING DIRECTLY OR INDIRECTLY TO THE OBLIGATIONS, ANY COLLATERAL OR SECURITY FOR THE OBLIGATIONS, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, AND/OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, WHETHER BASED ON CONTRACT, TORT OR OTHERWISE, AND WHETHER BY CLAIM, COUNTERCLAIM OR OTHERWISE. EACH PARTY HEREBY (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE OR ANY OTHER PERSON HAS REPRESENTED TO IT, WHETHER EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION; (B) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO EXECUTE AND DELIVER THIS INSTRUMENT AND ALL OTHER OF THE LOAN DOCUMENTS TO WHICH IT IS A PARTY, OR TO WHICH IT IS OTHERWISE BOUND, BY, AMONG OTHER THINGS, THE MUTUAL**



**WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION; AND (C) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED.**

7.    **CERTAIN AGREEMENTS; GOVERNING LAW; MISCELLANEOUS.**

7.1    Borrower hereby acknowledges and agrees that all payments due and payable under this Note are in addition to any and all other specified amounts that may from time to time be due and payable under any other of the Loan Documents (whether upon demand or otherwise in accordance with the provisions thereof). In furtherance of the foregoing (but without implied limitation), Borrower hereby agrees to pay upon demand any and all Costs and Expenses, including, without limitation, any and all attorneys' fees, costs, expenses and/or disbursements, and any costs of collection, which may be incurred from time to time by Lender or any Affiliates, attorneys, accountants, consultants, agents, appraisers and/or representatives in connection with: (i) the preparation, administration, review, amendment, extension, increase and/or any other modification from time to time of this Note or any other of the Loan Documents, or otherwise in connection with the Obligations; and/or (ii) the enforcement of any obligations under this Note or under any other of the Loan Documents, or with respect to any other Obligations. In the event any of the foregoing amounts referenced in this Section 7.1 shall remain unpaid after Lender's demand therefor, such amounts shall bear interest at the Default Rate from the date of Lender's demand until paid in full.

7.2    Borrower hereby acknowledges and agrees that Lender may at any time and from time to time (i) pledge all or any portion of its rights under this Note, and/or (ii) sell or assign, in whole or in part, or grant participations in, this Note and/or any obligations evidenced hereby or by any other of the Loan Documents, subject to and in accordance with the terms of the Loan Agreement concerning the foregoing (i) and (ii) (if any). If any term of this Note, or the application hereof to any Persons or set of circumstances, shall to any extent be invalid, illegal and/or unenforceable, the remainder of this Note, or the application of such provision or part thereof to Persons or circumstances other than those as to which it is invalid, illegal and/or unenforceable, shall not be affected thereby, and (a) each term of this Note shall be valid and enforceable to the fullest extent consistent with applicable law, and (b) this Note shall be interpreted and construed as though such invalid, illegal and/or unenforceable term or provision (or any portion thereof) were not contained in this Note.

7.3    This Note and the terms and provisions hereof shall be the joint and several obligation of Borrower and all sureties, endorsers and guarantors hereof, and shall be binding upon such Persons and their respective heirs, executors, legal representatives, estates, successors, successors-in-title and assigns (as the case may be), and each or any of them, whether by voluntary action of the parties or by operation of law. This Note shall inure to the benefit of each Party; and, as used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, executors, legal representatives, estates, successors, successors-in-title and assigns, whether by voluntary action of the parties or by operation of law. If Borrower shall at any time (whether on the Note Date or at any time thereafter) consist of more than one Person, each such Person shall be jointly and severally liable to perform, observe and pay all of the obligations of Borrower under this Note and all other of the Obligations. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural and vice versa. Titles of headings and sections in, and the title of, this Note, if any, are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions of this Note or any other of the Loan Documents. This Note and the other Loan Documents contain the entire agreements between the parties hereto or bound hereby relating to the subject matter hereof and thereof. Except as otherwise herein provided, no modification or amendment of this Note shall be effective, and the same shall be deemed to be null and void, unless the same shall be made in writing and signed by each Party. The term "Lender" shall include the holder or holders of this Note at the time in question. As used herein, in all other of the Loan Documents and in any other

agreement, instrument or other document now or hereafter executed in connection with this Note or with respect to all or any part of the Obligations, the term "**and/or**" means one or the other or both, or any one or more or all, of the things or Persons in connection with which the conjunction is used.

7.4     Borrower hereby (i) represents to Lender that it has consulted with and obtained—or has been afforded, and voluntarily elected not to avail itself of, the opportunity to consult with and obtain— the advice and counsel of one or more independent and competent attorneys of Borrower's own selection with respect to its execution and delivery of all of the Loan Documents to which it is a signatory (and/or to which Borrower or any of its property is otherwise bound) and the transactions contemplated hereby and thereby; (ii) confirms its full and complete understanding of all of the terms and conditions of all such Loan Documents and all such transactions; (iii) agrees not to assert or interpose, and hereby waives, any defense or claim against Lender (and/or any Affiliates, employees, officers, directors, shareholders, members, principals, attorneys, agents or representatives thereof or therefor) by reason of not having been represented by independent and competent attorneys in connection with any such Loan Documents and/or transactions; and (iv) acknowledges that Lender is expressly relying on the immediately preceding (i), (ii) and (iii) in connection with its acceptance of this Note and the extension of the loan hereby contemplated.

7.5     This Note and the obligations arising hereunder shall at all times be governed by, and construed in accordance with, the laws of Massachusetts, excluding any conflicts of law rule or principle which might refer such construction to the laws of any other jurisdiction. Borrower hereby knowingly, intentionally and voluntarily: (i) consents and submits to non-exclusive jurisdiction in Massachusetts over any suit, action or proceeding by any Person arising from or relating to the Obligations or any of the Loan Documents; (ii) agrees that any such action, suit or proceeding may be brought in any state or federal court of competent jurisdiction sitting in Massachusetts, and, to the fullest extent permitted by applicable law, further agrees that it will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the right of Lender to bring any action, suit or proceeding in any other forum); (iii) waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court; and (iv) consents to service of process in any such suit being made upon Borrower by mail at the address specified for Borrower in the Section entitled "*Notices*" in the Loan Agreement (unless Borrower has by five (5) days' prior written notice to Lender specified another address in accordance with the notice and change of address provisions therein).

7.6     Borrower hereby acknowledges and agrees that this Note evidences an obligation of a commercial nature, and not an obligation of a personal, family, agricultural or household nature. Time is of the essence with respect to all provisions of this Note.

7.7     Upon receipt of an affidavit signed by a duly authorized officer of Lender as to the loss, theft, destruction or mutilation of this Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

7.8     All notices, demands, requests, consents or approvals required, permitted, contemplated or desired to be given hereunder shall be in writing, and shall be made and deemed to have been validly served, given or delivered in accordance with the Section entitled "*Notices*" in the Loan Agreement.

*[Remainder of Page Intentionally Left Blank;
Signature Page Follows]*



**IN WITNESS WHEREOF**, Borrower has caused this Note to be executed by its duly authorized signatory as an instrument under seal as of the Note Date.

*BORROWER*:

**THG PROPERTIES LLC**

*Witness to Borrower's Signature:*

Witness Signature

Witness Name: _____
GEORGE A. HEWETT, ESQ.
DAVIS, MALM & D'AGOSTINE, P.C.
One Boston Place
Boston, MA 02108

By: _____
Name: James DeRosier
Title: Manager

THE COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.

On this __31st__ day of March, 2017, before me, the undersigned notary public, personally appeared JAMES DEROSIER, in his capacity as Manager of **THG PROPERTIES LLC**, who proved to me through satisfactory evidence of identification, which was ☒ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person whose name is signed on the preceding document, and who acknowledged to me that he signed it voluntarily for its stated purpose in such capacity as Manager of **THG PROPERTIES LLC**.

*(Notarial Seal)*

Notary Public: _____
Printed Name: George A. Hewett
My Commission Expires: Jan 14, 2022

5039L  Pg329  #15607

03-31-2017 @ 02:23p

Exhibit "D"

**MORTGAGE AND SECURITY AGREEMENT**
(INCLUDING ASSIGNMENT OF LEASES AND RENTS)
(INTERIM)

*Property Address: 386 Commercial Street, Provincetown, Massachusetts 02657*

This MORTGAGE AND SECURITY AGREEMENT (INCLUDING ASSIGNMENT OF LEASES AND RENTS) (INTERIM) (as the same may be amended, restated, replaced, supplemented or otherwise modified, this "**Mortgage**") is made as of March 31, 2017 (the "**Mortgage Date**") by **THG PROPERTIES LLC**, a Massachusetts limited liability company (as mortgagor) having a principal place of business at 386 Commercial Street, Provincetown, Massachusetts 02657 (collectively with its permitted assigns and any successors in title to the Mortgaged Property (hereinafter defined), other than Lender (hereinafter defined), hereinafter referred to as "**Borrower**").

1.    **MORTGAGE AND SECURITY AGREEMENT**.

1.1    <u>Original Grant</u>.  For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower does hereby mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to **AVIDIA BANK**, a Massachusetts-chartered savings bank (as mortgagee) having a principal place of business at 42 Main Street, Hudson, Massachusetts 01749-0190 (collectively with its successors, assigns and/or any other holder or holders from time to time of the Note (hereinafter defined), sometimes herein referred to as "**Lender**"), with MORTGAGE COVENANTS and with the STATUTORY POWER OF SALE and upon the STATUTORY CONDITION for the benefit and security of Lender, so much of the Mortgaged Property (hereinafter defined) as constitutes the Real Property (hereinafter defined); and Borrower hereby grants to Lender a **second (2ⁿᵈ) priority security interest** in all of Borrower's right, title, interest and claims in, to and under so much of the Mortgaged Property as constitutes the Collateral (hereinafter defined), all to secure the following obligations of Borrower to Lender, which such following obligations are herein referred to as the "**Mortgage Debt**"):

1.1.1    the payment of amounts from time to time due pursuant to the terms of a certain Promissory Note (interim) dated the Mortgage Date made and delivered by Borrower to the order of Lender in the original principal amount of ONE MILLION ONE HUNDRED TWENTY-FIVE THOUSAND AND 00/100 DOLLARS (**$1,125,000.00**) (as amended, restated replaced, supplemented, extended or otherwise modified from time to time, the "**Note**"), at the times, in the manner and with interest all as more fully provided therein (including any and all renewals, extensions, amendments and rewritings thereof and advances thereunder, all whether now or hereafter made);

1.1.2    the payment and performance of all "Obligations" as such term is defined in that certain Loan Agreement (construction) dated as of the Mortgage Date by and between Lender and

**This instrument, after recording, to be returned to**:
Devon A. Kinnard, Esquire
DAVIS, MALM & D'AGOSTINE, P.C.
One Boston Place, 37ᵗʰ Floor
Boston, MA 01208

*TO BE RECORDED WITH THE BARNSTABLE COUNTY (MA) REGISTRY OF DEEDS.*

Borrower (hereinafter, the "**Obligations**"), all of the terms and conditions of which are incorporated herein by this reference (amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**");

        1.1.3   the performance of all covenants and agreements contained in the Note, the Loan Agreement, this Mortgage that certain Assignment of Leases and Rents, dated as of the Mortgage Date, made by Borrower in favor of Lender and delivered in connection with this Mortgage (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Assignment of Leases**"), this Mortgage and all other agreements, instruments or other documents evidencing or securing or otherwise setting out conditions, covenants, representations and/or remedies in favor of Lender in connection with the Loan and/or the Obligations, or otherwise executed or delivered in connection therewith (as any one or more of the same may from time to time amended, restated and/or otherwise modified, collectively the "**Loan Documents**").

      1.2   Certain Definitions.  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Loan Agreement.  As used in this Mortgage:

        1.2.1   "**Taxes**" shall mean all taxes, assessments, water rates or sewer rents, now or hereafter levied or assessed or imposed against the (i) Mortgaged Property or part thereof, together with all interest and penalties thereon; and/or (ii) Rents, issues, income or profits thereof or upon the Lien(s) or estate hereby created, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or ad valorem real estate or personal property taxes or as income taxes; and

        1.2.2   "**Other Charges**" shall mean all ground rents, maintenance charges, impositions other than Taxes, any so-called "common expenses" or expenses allocated to and required to be paid by Borrower, and any other charges now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof.

      1.3   Mortgaged Property.  As used herein, the "**Mortgaged Property**" collectively means and refers to all of the real, personal, tangible and intangible property, rights, interests and estates of Borrower, whether now owned or hereafter acquired by Borrower (all of which Borrower does hereby mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender with mortgage covenants and with the statutory power of sale and upon the statutory condition), including, without limitation, all of Borrower's right, title, interest and claims in, to and under the following:

        1.3.1   the real property described in Exhibit A attached hereto and made a part hereof (the "**Land**");

        1.3.2   all additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise, be expressly made subject to the lien of this Mortgage;

        1.3.3   the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**"); *provided, however,* that notwithstanding the foregoing, "Improvements" shall not include any property which tenants are entitled to remove pursuant to Leases (hereinafter defined), except to the extent that Borrower shall have any right or interest therein;

        1.3.4   all easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, permits, licenses, rights of way and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or

hereafter belonging, relating or pertaining to the Land and the Improvements and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

1.3.5    all "equipment," as such term is defined in Article 9 of the UCC (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, heating, ventilation or air conditioning equipment, garbage equipment and apparatus, incinerators, boilers, furnaces, motors, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**"); *provided*, *however*, that notwithstanding the foregoing, "Equipment" shall not include any property belonging to tenants under Leases, except to the extent that Borrower shall have any right or interest therein;

1.3.6    all Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Mortgaged Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Mortgaged Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). It is understood and agreed by Lender and Borrower that the Fixtures and all the Improvements are part and parcel of the Land (the Land, the Improvements and the Fixtures are collectively herein referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby; *provided*, *however*, that notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to Leases, except to the extent that Borrower shall have any right or interest therein;

1.3.7    all furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the UCC, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the UCC, as adopted and enacted by the state or states (or commonwealth or

commonwealths) where any of the Mortgaged Property is located (as amended from time to time, the "**UCC**"), superior in lien to the lien of this Mortgage and all proceeds and products of the above;

       1.3.8    all leases (including, without limitation, ground leases, subleases or subsubleases), lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy, all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases or other agreements entered into in connection with such leases, subleases, subsubleases or other agreements, and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, deposits (including, without limitation, security, utility and other deposits) accounts and receipts from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Mortgage Debt and the performance of the Obligations;

       1.3.9    all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to all, or any portion of, or any interest in, the Mortgaged Property, whether from the exercise of the right of condemnation or eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of any such right), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property including, without limitation, any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of all or any portion of the Improvements, the Equipment, the Fixtures, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Mortgaged Property or any portion thereof (individually and collectively, "**Awards**"); and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation;

       1.3.10    all proceeds of insurance in respect of the Mortgaged Property under any and all policies of insurance covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any such policies, judgments or settlements made in lieu thereof, in connection with any fire or other casualty to the Mortgaged Property;

       1.3.11    all refunds, rebates or credits in connection with any reduction in Taxes or Other Charges charged against the Mortgaged Property;

       1.3.12    all proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and Awards, into cash or liquidation claims;

       1.3.13    the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Lender in the Mortgaged Property;

       1.3.14    all of Borrower's right, title, interest and claims in, to and under any and all contracts, agreements, certificates, instruments, franchises, permits, licenses, plans, specifications and

other documents (whether now or hereafter entered into) respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof, and any Improvements or any business or activity conducted on the Land and any part thereof, including, without limitation, the right, upon the occurrence of an Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), to receive and collect any sums payable to Borrower thereunder;

1.3.15  all trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Mortgaged Property; *provided*, *however*, that excluded from this Section 1.3.15 shall be any such general intangibles which are the sole and exclusive property of tenants pursuant to Leases, except to the extent that Borrower shall have any right or interest therein;

1.3.16  all reserves, escrows and deposit accounts maintained by Borrower with respect to the Mortgaged Property, including, without limitation, all accounts established or maintained pursuant to this Mortgage, the Loan Agreement and/or any other of the Loan Documents; together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof; and

1.3.17  any and all other rights of Borrower in and to the items set forth in Section 1.3.1 through Section 1.3.16 above.

1.4    Security Agreement.  This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the UCC.  The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Mortgaged Property including all accounts established by Lender pursuant to the Loan Agreement.  By executing and delivering this Mortgage, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a first (1st) priority security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Mortgaged Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the UCC (all such portions of the Mortgaged Property so subject to the UCC collectively herein referred to as the "**Collateral**").  If an Event of Default shall occur and be continuing (beyond the expiration of any applicable notice, grace or cure period), Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Lender after the occurrence and during the continuance of any Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender.  Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees and costs, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default.  Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower.  The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Mortgage Debt in such priority and proportions as Lender in its discretion shall deem proper.  Borrower's (debtor's) principal place of business is as set forth on the first (1st) page hereof and the address of Lender (secured party) is as set forth on the first (1st) page hereof.

1.5    <u>Fixture Filing</u>. Certain of the Mortgaged Property is or will become "fixtures" (as that term is defined in the UCC) on the Land, and this Mortgage, upon being filed or recorded in the real estate records of the city or county wherein such fixtures are situated (which may include, without limitation, in or with any registry, clerk, court or land court), shall operate also as a financing statement (naming Borrower as the Mortgage Debtor and Lender as the Secured Party) filed as a fixture filing in accordance with the applicable provisions of said UCC upon such of the Mortgaged Property that is or may become fixtures. Notwithstanding the generality of the immediately preceding sentence regarding fixture filings (but not in limitation thereof), Borrower hereby consents to Lender filing one or more UCC-1 financing statements (and any continuations and/or amendments thereof or thereto) with appropriate filing and recording offices (including, without limitation, in or with any office of the secretary of the state or commonwealth in which Borrower is organized and/or in which any of the Collateral is located) in order to perfect Lender's security interest in the Collateral granted herein.

1.6    <u>Pledges of Monies Held</u>. Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender in connection with the Loan, including, without limitation, any sums deposited in the Operating Account, as additional security for the Obligations until expended or applied as provided in this Mortgage.

2.    **ASSIGNMENTS.**

2.1    <u>Assignment of Leases and Rents</u>. Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute, and immediate assignment and not an assignment for additional security only. Notwithstanding the generality of the immediately preceding sentence, and subject to the immediately following proviso and the terms of the Assignment of Leases, the Loan Agreement and <u>Section 2.1.1 below</u>, so long as there shall exist no Event of Default which is continuing beyond the expiration of any applicable notice, grace or cure period, Borrower shall be, and hereby is, granted a revocable license to collect, receive, use and enjoy the Rents and to enforce the terms of any Leases in the ordinary course of business (such license, hereinafter, the "**Rents License**"); <u>provided</u>, <u>however</u>, that such Rents License is subject to the condition that, among other things, Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Mortgage Debt, for use in the payment of such sums, and Borrower shall not collect any Rents or other payments under a Lease more than one (1) month in advance of the time that it is due under the terms of such Lease.

2.1.1    Upon or at any time after the occurrence of an Event of Default (which is continuing beyond the expiration of any applicable notice, grace or cure period), without (i) in any way waiving such Event of Default (or any other Events of Default), (ii) notice, or (iii) regard to the adequacy of any security for the Mortgage Debt, the Rents License shall be automatically revoked (and Borrower hereby expressly acknowledges and consents to such automatic revocation), and Lender may, at its option exercisable in its sole discretion, enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys, and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise (except in the event of fraud or willful misconduct on the part of Lender), and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto, and Borrower shall and hereby agrees to surrender possession of the Mortgaged Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may, at its option exercisable in its sole discretion: (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (ii) complete any construction on the Mortgaged Property in such manner and form as Lender deems advisable in sole but reasonable discretion; (iii) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property as Lender deems advisable in sole but reasonable discretion; (iv) exercise all rights and powers of Borrower with respect to

the Mortgaged Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Mortgaged Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver or trustee appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Mortgaged Property to Lender or to such receiver or trustee and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Mortgaged Property to the payment of the Mortgage Debt and the performance of the Obligations, in such order, priority and proportions as Lender shall deem advisable in sole but reasonable discretion after deducting therefrom all fees, Costs and Expenses (including the reasonable fees, costs and expenses and disbursements of Lender's legal counsel) incurred in connection with the aforesaid operations and any and all amounts necessary to pay the Taxes, Other Charges, insurance premiums and other Costs and Expenses in connection with the Mortgaged Property, as well as reasonable but market rate compensation for the services of Lender, its Affiliates, legal counsel, agents and employees.

2.1.2    Borrower hereby expressly agrees to in all events defend, indemnify and hold harmless Lender and each and all of the other Indemnified Parties from and against any and all liability, claims, suits, actions, Costs and Expenses, disbursements, losses and/or damages which may or might be directly or indirectly incurred by any one or more Indemnified Parties by virtue of the existence of, or as a consequence of any action taken by any of them (except for fraudulent actions or willful misconduct) in the exercise of the rights conferred by, the assignment(s) made, granted and set forth in Section 2.

2.2    Assignment of Contracts, Licenses, Permits, Plans, Specifications, etc. To the maximum extent assignable, Borrower hereby assigns and grants to Lender all of Borrower's right, title, interest and claims in, to and under any and all contracts, agreements, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents (whether now or hereafter entered into) respecting or pertaining to, or otherwise directly or indirectly in connection with, the use, occupation, construction, management or operation of the Land and any part thereof, and any Improvements or any business or activity conducted on the Land and any part thereof, including, without limitation, the right, upon the occurrence of an Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), to receive and collect any sums payable to Borrower thereunder. For the avoidance of doubt, the assignments and grants made by Borrower to Lender under this Section 2.2 shall exclude the Rents and Leases, which such Rents and Leases are assigned and granted by Borrower to Lender under Section 2.1 and upon (and subject to) the terms and conditions of the Assignment of Leases.

2.2.1    Upon the (i) payment and performance, and indefeasible satisfaction, in full, of the entirety of the Mortgage Debt, and (ii) filing or recording of a termination or discharge (as applicable) of this Mortgage and the lien and other Liens hereby created, all right(s), title(s) and interest(s) of Borrower granted and assigned to Lender pursuant to this Section 2 shall automatically revert to Borrower without the necessity of further action or consent by Lender.

3.    **BORROWER COVENANTS**.  Borrower hereby covenants and agrees that:

3.1    Payment of Debt.  Borrower will pay the Mortgage Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

3.2    Incorporation by Reference.  All the covenants, conditions and agreements contained in (i) the Loan Agreement, (ii) the Note, and (iii) any and all other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

3.3    Insurance.  Borrower shall obtain and maintain, or cause to be maintained, in full force

and effect at all times insurance with respect to Borrower and the Mortgaged Property as required pursuant to the Loan Agreement.

3.4     Impositions. Upon and at any time after occurrence any Event of Default (which is continuing beyond the expiration of any applicable notice, grace or cure period), Borrower shall and hereby agrees to pay to Lender on a monthly basis on each payment date under the Note, in addition to any and all payments thereunder required and/or as otherwise required under any other of the Loan Documents (including, without limitation, this Mortgage), a monthly apportionment of one-twelfth $(1/12^{th})$ of the sum estimated by Lender to be sufficient to enable Lender to accumulate and make all payments of all Taxes (and, as applicable, Other Charges, insurance premiums and other reasonable Costs and Expenses) with respect to the Mortgaged Property (collectively, "**Impositions**") at least thirty (30) days' prior to the dates such Impositions become due. Any deficiency with respect to the amount of any such Impositions, when the actual amount thereof becomes known, shall be paid by Borrower to Lender immediately upon written demand therefor in immediately available funds and, if not so paid by Borrower immediately upon such written demand, Lender is hereby expressly authorized by Borrower to charge (but Lender shall not be obligated to charge) the same to the account of Borrower (including, without limitation, any account maintained by Borrower with Lender pursuant to the Loan Agreement). Lender shall maintain amounts collected pursuant to this Section 3.4 in a non-interest bearing account which may be commingled with other funds of Lender. Lender shall apply said funds to the payment of Impositions to the extent such amounts are determined by Lender to be due and payable, and Borrower shall deliver to Lender all bills evidencing any such Impositions within five (5) days after the receipt thereof by Borrower. Borrower hereby expressly acknowledges and agrees that, (a) upon the occurrence of any Event of Default that continues beyond the expiration of any applicable notice, grace or cure period, Lender shall not be required to apply any funds paid and/or escrowed pursuant to this Section 3.4, and, to the maximum extent permitted by applicable law, Lender may setoff such funds against, and/or apply any such funds to, the Mortgage Debt and/or the Obligations; and (b) No interest shall be paid or credited with respect to any amounts paid by Borrower under this Section 3.4. Borrower hereby covenants and agrees to reimburse Lender immediately upon demand for any and all reasonable Costs and Expenses actually incurred by Lender, its agents and/or representatives in connection with Lender obtaining information concerning the amount of Taxes (and/or any other Impositions) from time to time due with respect to the Mortgaged Property or any part thereof, and Borrower hereby authorizes and consents to Lender obtaining any such information.

3.5     Maintenance of Property. Borrower shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender or as otherwise permitted pursuant to the Loan Agreement. Borrower shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any fire or other casualty or become damaged, worn or dilapidated or which may be affected by any condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

3.6     Waste. Borrower shall not commit or suffer any waste of the Mortgaged Property or make any change in the use of the Mortgaged Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Mortgaged Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Mortgaged Property or the security of this Mortgage. Borrower will not, without the express prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

3.7    Payment for Labor and Materials.

3.7.1    Subject to Section 3.7.2 hereof, Borrower (i) will promptly pay (or cause to be paid) when due all bills and costs for labor, materials, and specifically fabricated materials ("**Labor and Material Costs**") incurred in connection with the Mortgaged Property, (ii) will, subject to the terms and conditions of the Loan Agreement, neither suffer nor permit to exist any mechanics' lien or similar Lien to remain against the Mortgaged Property by reason of work, labor, services and/or materials supplied or claimed to be supplied in connection with the Mortgaged Property, even though inferior to the Lien and other Liens created hereby and by the other Loan Documents, and (iii) neither suffer nor permit to exist in respect of the Mortgaged Property (or any part thereof) any Lien (other than the Liens created hereby and other than Permitted Liens).

3.7.2    After prior written notice to Lender, Borrower, at its own Cost and Expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that: (i) no Event of Default has occurred and is continuing beyond the expiration of any applicable notice, grace or cure period; (ii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Mortgaged Property, or Borrower shall have paid all of the Labor and Material Costs under protest; (iii) such proceeding shall not cause Borrower to be in default, breach or violation of any of Borrower's Contractual Obligations; (iv) neither the Mortgaged Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost; and (v) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender, to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

3.8    Performance of Other Agreements.    Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Mortgaged Property, and any amendments, modifications or changes thereto.

4.    **RELIANCE AND OBLIGATIONS**.

4.1    No Reliance on Lender.    The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower, as applicable, are experienced and have expertise in the business of owning, operating and maintaining (or causing to be maintained) properties similar to the Mortgaged Property, and Borrower and Lender are relying solely upon such experience, expertise and business plan in connection with the ownership and operation of the Mortgaged Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Mortgaged Property.

4.2    Reliance by Lender.

4.2.1    Borrower recognizes and acknowledges, and expressly confirms its understanding, that, in accepting the Note, this Mortgage and all other of the Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the representations and warranties of Borrower made in connection with the Mortgaged Property and the Collateral set forth in the Loan Agreement (and/or any other Loan Documents to which Borrower is a party and that contain any such representations and warranties), without any obligation to investigate the Mortgaged Property and/or the Collateral, and notwithstanding any such investigation that may have been heretofore made or caused to be made by Lender; that such reliance existed on the part of Lender prior to the Mortgage Date, that such representations and warranties are a material inducement to Lender in making the Loan; and that, in the absence of such representations and warranties, Lender would not be willing to make the Loan and accept the Note, this Mortgage or other of the Loan Documents.

4.2.2    Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Mortgaged Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for the repayment of the Mortgage Debt and the performance of the Obligations.  Borrower acknowledges that Lender has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Borrower default in the repayment of the Mortgage Debt or the performance of the Obligations, Lender can recover the Mortgage Debt by a sale of the Mortgaged Property.

4.3    No Lender Obligations.

4.3.1    Notwithstanding the provisions of Sections 1.3.8, 1.3.14 or 2 hereof, or the provisions of the Assignment of Leases, Lender is not undertaking the performance of (i) any obligations under the Leases, or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

4.3.2    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Mortgage or any other of the other Loan Documents, including, without limitation, any certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, insurance policy or title insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

5.    **FURTHER ASSURANCES.**

5.1    Recording of Mortgage, etc.  Borrower shall and hereby agrees to, upon the execution and delivery of this Mortgage, and from time to time after the Mortgage Date, cause this Mortgage and any other of the Loan Documents creating or evidencing the liens and other Liens upon the Mortgaged Property, and each instrument of further assurance herein or therein provided or contemplated (or otherwise required by Lender), to be filed, registered or recorded in such manner and in such places as may be required by any present or future Requirements of Law in order to publish notice of, and to fully protect and perfect the liens and other Liens of the Loan Documents upon, and the interest of Lender in, the Mortgaged Property and all components thereof (including, without limitation, the Collateral). Borrower shall and hereby agrees to pay any and all taxes, filing, registration and/or recording fees, and any and all reasonable Costs and Expenses incident to the preparation, execution, acknowledgment, recording and/or filing of this Mortgage, any other of the Loan Documents, any note, deed of trust or mortgage supplemental hereto, any other security instrument or document with respect to the Mortgaged Property, and/or any instrument of further assurance, and any modification, amendment, continuation and/or restatement of or to any one or more of the the foregoing documents, and all Governmental Charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust or mortgage supplemental hereto, any other security instrument or document with respect to the Mortgaged Property, and/or any instrument of further assurance, and any modification, amendment, continuation and/or restatement of or to any one or more of the the foregoing documents, except where prohibited by applicable law to do so.

5.2    Further Acts, etc.  Borrower shall and hereby agrees to, at the sole but reasonable Cost and Expense of Borrower, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, deeded, granted,

bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Requirements of Law. Borrower, upon written demand, will execute and deliver, and in the event it shall fail to so execute and deliver within five (5) Business Days after such written demand, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Mortgaged Property. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including, without limitation, such rights and remedies available to Lender pursuant to this <u>Section 5.2</u>. The foregoing power of attorney specified in this <u>Section 5.2</u> shall terminate upon the payment and performance, and indefeasible satisfaction and discharge, in full, of the Mortgage Debt and all Obligations.

5.3   <u>Severing of Mortgage</u>. This Mortgage and the Note may, at any time until the same shall be fully paid and satisfied, at the sole election of Lender, be severed into two or more notes and two or more security instruments in such denominations as Lender shall determine in its sole discretion, each of which shall cover all or a portion of the Mortgaged Property be more particularly described therein. To that end, Borrower, upon written request of Lender, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then-current owner of the Mortgaged Property, to Lender and/or its designee or designees, substitute notes and security instruments in such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses similar to those contained herein and in the Note, and such other documents and instruments as may be required by Lender.

5.4   <u>Replacement Documents</u>. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

6.   **TRANSFER**. Except (i) as otherwise expressly consented to in a writing signed by an officer of Lender, or otherwise expressly set forth in any applicable provisions of the Loan Agreement (including Section 5.5 therein) or any other of the Loan Documents (and expressly subject to the terms and conditions of any such applicable provisions), if the legal or beneficial ownership of the Mortgaged Property, or any part thereof, becomes vested in anyone other than Borrower, the whole sum of principal and interest then remaining unpaid in respect of the Mortgage Debt shall become immediately due and payable (in immediately available USD) without notice at the option of Lender, and Lender may, without notice to Borrower, deal with such successors in interest with reference to the Mortgage and the Mortgage Debt hereby secured, and in the same manner as with Borrower, without in any way altering or discharging Borrower's liability hereunder, upon and/or in connection with the Mortgage Debt and/or the Obligations. Borrower agrees that upon any such transfer, Borrower shall remain jointly, severally and permanently liable for the Mortgage Debt, and Borrower hereby expressly waives any defense available to sureties and consents to the exchange or release of any Collateral, extensions for time of payment, the release of one or more Person(s) liable for the Mortgage Debt, and to changes in the amount of the Mortgage Debt, the terms of payment and/or the interest rate(s) applicable thereto, and expressly agrees that all or any such events to which such consent is herein given may occur on one or more occasions.

7.   **DEFAULT**. This Mortgage is on the STATUTORY CONDITION and upon the further condition that there shall not exist and be continuing (beyond the expiration of any applicable notice,

grace or cure period) any "default" or "Event of Default" (howsoever such terms may be used or defined) under the Loan Agreement, the Note or any other of the Loan Documents, the occurrence and continuance of any of which shall constitute (i) an "**Event of Default**" hereunder, and (ii) a "default" or an "Event of Default" (howsoever such terms may be used or defined) under all of the Loan Documents (irrespective of whether any such Loan Documents shall so state).

8.   **RIGHTS AND REMEDIES OF LENDER**.

     8.1   Remedies.   Upon and during the occurrence and continuance of any Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), Borrower hereby agrees that Lender may take such action, without notice or demand, to the fullest extent permitted by applicable law, as it deems advisable to protect and enforce its cumulative rights and remedies against Borrower and in and to the Mortgaged Property, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting any other of the cumulative rights and remedies of Lender:

        8.1.1   declare the entire unpaid Mortgage Debt to be immediately due and payable;

        8.1.2   institute proceedings, judicial or otherwise, for the complete foreclosure of the lien of this Mortgage in the manner provided by law, including, without limitation, the STATUTORY POWER OF SALE and the exercise of all rights of a secured party under the UCC, in which case the Mortgaged Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner, and Lender may become the purchaser of the Mortgaged Property at any foreclosure sale where it is the highest bidder;

        8.1.3   with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Mortgage Debt then due and payable, subject to the continuing lien and other Liens created by this Mortgage for the balance of the Mortgage Debt and the Obligations not then due, unimpaired and without loss of priority;

        8.1.4   sell for cash or upon credit the Mortgaged Property, and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels or parts thereof, at such time and place, upon such terms and after such notice thereof as may be required or permitted by applicable law; and, without limiting the foregoing:

            (a)   in connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Mortgaged Property which consists of (i) a right in action, (ii) property that can be severed from the Real Property covered hereby, or (iii) any improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property.   Where the Mortgaged Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

            (b)   Lender shall be entitled to elect to proceed against any or all of the Real

Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender;

(c)    should Lender elect to sell any portion of the Mortgaged Property which is Real Property or which is Personal Property, Equipment or Fixtures that Lender has elected under applicable law to sell together with Real Property in accordance with applicable law governing a sale of the Real Property, Lender shall give such notice of the occurrence and continuance of an Event of Default, if any, and its election to sell such Property as may then be required by law. Thereafter, upon the giving of such notice of sale and the expiration of any required time period as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower or Lender at the time and place specified in the notice of sale, sell such Real Property or part thereof at public auction to the highest bidder for cash in USD. Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale; and

(d)    if the Mortgaged Property consists of several lots, parcels or items of property, Lender may at its option (exercisable in its sole discretion, but subject to applicable law), (i) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (ii) elect to sell such lots, parcels or items through a single sale, or through two (2) or more successive sales, or in any other manner Lender designates. Any Person, including, without limitation, Borrower or Lender, may purchase at any sale hereunder. Should Lender desire that more than one (1) sale or other disposition of any Mortgaged Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the lien of this Mortgage on any part of the Mortgaged Property not sold until all the Obligations have been indefeasibly satisfied and discharged in full. In the event Lender elects to dispose of the Mortgaged Property through more than one (1) sale, except as otherwise provided by applicable law, Borrower shall and hereby agrees to pay any and all Costs and Expenses of each such sale and of any judicial proceedings wherein any such sale may be made;

        8.1.5    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or any other of the Loan Documents;

        8.1.6    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

        8.1.7    apply for the appointment of a receiver, trustee, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Mortgage Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the

Loan or any Person otherwise liable for the payment of the Mortgage Debt or any part of the Obligations;

8.1.8    exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral; and (ii) request that Borrower, at Borrower's sole Cost and Expense, assemble the Collateral and make the same available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower;

8.1.9    apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Mortgage or any other of the Loan Documents to the payment of the following items in any order in its sole discretion: (i) Taxes and Other Charges; (ii) insurance premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note; and/or (v) all other sums payable pursuant to the Note, the Loan Agreement, this Mortgage and/or any other of the other Loan Documents, including, without limitation, any "Prepayment Fees" (as such term is defined under the Note and incorporated herein by this reference), if applicable, and advances made by Lender pursuant to the terms of this Mortgage, the Note, the Loan Agreement and/or any other of the Loan Documents; or

8.1.10    pursue such other remedies as Lender may have under applicable law.

8.2    <u>Sale of Less Than all of the Mortgaged Property</u>. In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Mortgaged Property unimpaired and without loss of priority.

8.3    <u>Application of Proceeds</u>. The purchase money, proceeds and avails of any disposition of the Mortgaged Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Mortgage or the other Loan Documents, may be applied by Lender to the payment of the Mortgage Debt in such priority and proportions as Lender in its discretion shall deem proper, except as any such Loan Documents may expressly otherwise provide.

8.4    <u>Right to Cure Defaults</u>. Upon the occurrence and during the continuance of any Event of Default (that is continuing beyond the expiration of any applicable notice, grace or cure period), Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any of the Obligations, make any payment or do any act required of Borrower hereunder or under any other of the Loan Documents with respect to any Obligations which payment or action on the part of Lender shall be in such manner and to such extent as Lender may deem advisable (in its sole but reasonable discretion) to protect the security hereof. Lender is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or to collect the Mortgage Debt, and the Cost and Expense thereof (including reasonable attorneys' fees and other reasonable Costs and Expenses to the maximum extent permitted by applicable law), with interest at the Default Rate (hereinafter defined), shall constitute a portion of the Mortgage Debt and shall be due and payable to Lender upon written demand. All reasonable attorneys' fees and other reasonable Costs and Expenses incurred by Lender in remedying any Event of Default (which is continuing beyond the expiration of any applicable notice, grace or cure period), or in appearing in, defending or bringing any such action or proceeding, as hereinabove provided or otherwise under any other of the provisions of any of the Loan Documents, shall bear interest at the "Default Rate" (as such term is defined in the Note and incorporated herein by this reference; the "**Default Rate**") for the period beginning on the first (1st) day after written

notice from Lender that such Costs and Expenses were incurred until the date of payment of the same, in full, to Lender. All such reasonable Costs and Expenses incurred by Lender, together with interest thereon calculated at the Default Rate (as specified in the immediately preceding sentence), shall be deemed to constitute a portion of the Mortgage Debt and to be secured by this Mortgage and the other Loan Documents, and shall be immediately due and payable upon written demand by Lender therefor in immediately available USD.

8.5   <u>Actions and Proceedings</u>. Lender has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its sole and absolute discretion, decides should be brought to protect its interest in the Mortgaged Property.

8.6   <u>Recovery of Sums Required To Be Paid</u>. Lender shall have the right, from time to time, to take action to recover any sum or sums which constitute a part of the Mortgage Debt as the same become due, without regard to whether or not the balance of the Mortgage Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for any Event of Default existing and continuing (beyond the expiration of any applicable notice, grace or cure period) at the time such earlier action was commenced. Lender may, regardless of the adequacy of, and without being required to first look to, anything by which the Mortgage Debt is secured, setoff against any deposit or other sum that may from time to time be credited by or due from Lender to Borrower and apply the same toward the satisfaction of Mortgage Debt.

8.7   <u>Examination of Books and Records</u>. During normal business hours and upon reasonable prior notice to Borrower (which may be given verbally), Lender, its agents, representatives, accountants and attorneys shall have the right, at Borrower's sole Cost and Expense, to (i) examine and audit at the Mortgaged Property, at any office(s) of Borrower and/or at any other location(s) where the books and records that reflect upon Borrower's financial condition, and/or the income, expenses and operation of the Mortgaged Property, are maintained or located, any and all such books, records and other papers; and (ii) make copies and extracts from any such books, records and other papers. This <u>Section 8.7</u> shall apply until the Mortgage Debt has been paid and indefeasibly satisfied and discharged, in full, without regard to whether an Event of Default has occurred or is continuing.

8.8   <u>Other Rights, etc.</u>

8.8.1   The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Borrower shall not be relieved of the Obligations by reason of: (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Mortgage, or otherwise to enforce any of the provisions this Mortgage or any other of the Loan Documents; (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any Person liable for the Obligations or any portion thereof; or (iii) any agreement or stipulation by Lender extending the time of payment, or otherwise modifying or supplementing the terms of the Note, this Mortgage or any other of the Loan Documents.

8.8.2   Borrower expressly acknowledges and agrees that the risk of loss or damage to the Mortgaged Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Mortgaged Property, for failure to maintain any policies of insurance, or for failure to determine whether any insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Mortgaged Property or collateral not in Lender's possession.

8.8.3   Lender may resort for the payment and performance of the Mortgage Debt and

816033.1                                    Page 15 of 22

the Obligations to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Mortgage Debt, or any portion thereof, or to enforce the Obligations or any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Mortgage. The rights of Lender under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded under any of the Loan Documents, at law and/or in equity.

8.9     Right to Release Any Portion of the Mortgaged Property. Lender may release any portion of the Mortgaged Property for such consideration as Lender may require without, as to the remainder of the Mortgaged Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Mortgage Debt shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and Lender may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Mortgage shall continue as a lien and security interest in the remaining portion of the Mortgaged Property.

8.10     Violation of Laws. If the Mortgaged Property is not in full compliance with any Requirements of Law, Lender may impose additional requirements upon Borrower in connection therewith and herewith, including, without limitation, monetary reserves or financial equivalents.

8.11     Right of Entry. Upon reasonable prior notice to Borrower (which may be given verbally), Lender and its agents shall have the right to enter and inspect all or any portion of the Mortgaged Property at all reasonable times (subject to any then-applicable provisions of Tenant's Lease with respect to safety and security procedures).

8.12     Lender Not Obligated; Cumulative Rights. Nothing in this instrument shall be construed as obligating Lender to take any action or incur any liability with respect to the Mortgaged Property, and all options given to Lender are for its benefit and shall and may be exercised in such order and in such combination as Lender in its sole discretion may from time to time decide. Each remedy is distinct and cumulative to all other rights and remedies under this Mortgage and the Loan Documents or afforded by law and/or in equity, and may be exercised concurrently, independently or successively, in any order whatsoever.

9.     **WAIVERS**.

9.1     Marshaling and Other Matters. To the maximum extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshaling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, to the maximum extent permitted by applicable law, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Mortgaged Property subsequent to Mortgage Date.

9.2     Waiver of Jury Trial. **BORROWER, WITH AND UPON THE ADVICE OF INDEPENDENT AND COMPETENT LEGAL COUNSEL OF ITS CHOOSING, HEREBY KNOWINGLY, VOLUNTARILY AND EXPRESSLY (I) WAIVES ITS RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING (WHETHER BY CLAIM OR COUNTERCLAIM) BROUGHT OR INSTITUTED BY ANY PARTY TO THIS**

**MORTGAGE, ANY GUARANTOR OF ALL OR ANY PART OF THE MORTGAGE DEBT, OR ANY OF THE RESPECTIVE HEIRS, AFFILIATES, LEGAL REPRESENTATIVES, BENEFICIARIES, SUCCESSORS AND/OR ASSIGNS OF THE FOREGOING, WHICH RELATES DIRECTLY OR INDIRECTLY TO THE MORTGAGE DEBT, THE MORTGAGED PROPERTY, THE COLLATERAL, THIS MORTGAGE, THE NOTE, ANY OTHER OF THE LOAN DOCUMENTS AND/OR THE RELATIONSHIP BETWEEN OR AMONG LENDER, BORROWER AND/OR ANY OF THEIR RESPECTIVE AFFILIATES; AND (II) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED.**

10.    **APPLICABLE LAW.**

      10.1    <u>Governing Law</u>. This Mortgage will be governed and construed in accordance with the laws of the Commonwealth of Massachusetts (without regard to conflict of law provisions thereof). All provisions of the Loan Agreement incorporated herein by reference shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts.

      10.2    <u>Provisions Subject to Applicable Law</u>. All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law.

11.    **MISCELLANEOUS PROVISIONS.**

      11.1    <u>Notices</u>. All notices, demands and other communications made under or pursuant to this Mortgage shall, unless otherwise expressly provided herein, be made in writing and shall be deemed given when (i) sent by registered or certified mail (postage prepaid, return receipt requested), or delivered in person or by a nationally-recognized overnight courier (prepaid, with delivery confirmation), and (ii) addressed as follows:

| If to Borrower: | If to Lender: |
|---|---|
| THG PROPERTIES LLC | AVIDIA BANK |
| 386 Commercial Street | 42 Main Street |
| Provincetown, MA 02657 | Hudson, MA 01749 |
| Attn:  James D. DeRosier | Attn:    Andrew Miller, Senior Vice President |
| *with a copy (which shall not constitute notice) to*: | *with a copy (which shall not constitute notice) to*: |
| LESTER J. MURPHY JR., ESQUIRE | DAVIS, MALM & D'AGOSTINE, P.C. |
| 1380 Route 134, PO Box 1388 | One Boston Place, 37th Floor |
| East Dennis, MA 02641 | Boston, Massachusetts 01208 |
| | Attn:    Devon A. Kinnard, Esquire |

      11.1.1  Any party may change the address to which notices, demands or other communications are to be sent to such party by giving written notice of such change of address to each other party in the manner provided by <u>Section 11.1</u>. Any such change of address notice shall be deemed given when transmitted in accordance with <u>Section 11.1</u>.

      11.2    <u>No Oral Change</u>. This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

11.3    <u>Successors and Assigns</u>.  This Mortgage shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective successors and permitted assigns, as set forth in the Loan Agreement.  Lender shall have the right to assign or transfer its rights under this Mortgage in connection with any assignment of the Loan and the Loan Documents.  Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Mortgage.  Borrower shall not have the right to assign or transfer its rights or obligations under this Mortgage without the express prior written consent of Lender, except as may be otherwise provided in the Loan Agreement (and then in express accordance with applicable terms and conditions thereof), and any attempted assignment without such express prior written consent shall be null and void.

11.4    <u>Severability</u>.  If any term of this Mortgage shall be held to be invalid, illegal or unenforceable, the validity of all other terms hereof shall in no way be affected thereby, and this Mortgage shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included herein.

11.5    <u>Captions, Headings, Ambiguity, etc</u>.  The captions and headings in this Mortgage are for convenience only and in no way define or describe the scope or content of any provision of this Mortgage.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in the singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein", the word "Lender" shall mean "Lender and any subsequent holder of the Note", the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage", the word "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein, and the phrases "attorneys' fees", "legal fees", "counsel fees", "fees, costs and expenses of legal counsel" and phrases of like or similar import, whether appearing herein or in any other Loan Documents, shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, without limitation, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Mortgaged Property (including, without limitation, any Collateral), the Leases and the Rents and enforcing its rights hereunder or under any other of the Loan Documents.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms and the singular form of nouns and pronouns shall include the plural and vice versa.  Borrower hereby acknowledges that Borrower, Lender and their respective legal counsel have reviewed and negotiated this Mortgage, and agrees that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Mortgage or any other of the Loan Documents.  As used herein, the term "**and/or**" means one or the other or both, or any one or more or all, of the things or Persons in connection with which the conjunction is used.

11.6    <u>Subrogation</u>.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the payment and performance, and indefeasible satisfaction and discharge, in full, of the Mortgage Debt and all Obligations.

11.7    <u>Entire Agreement</u>.  The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto.  Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and

the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

11.8    Limitation on Lender's Responsibility.    No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Mortgaged Property by the tenants or any other Person, or for any dangerous or defective condition of the Mortgaged Property, or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.    Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession".

11.9    Principles of Construction.    In the event of any inconsistencies between the terms and conditions of this Mortgage and the terms and conditions of the Loan Agreement, the terms and conditions of the Loan Agreement shall control and be binding.

11.10    Relationship of Borrower and Lender; No Partnership or Joint Venture.    The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of the Loan Agreement, the Note, this Mortgage or any other Loan Document shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.    No provision of this Mortgage or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Borrower and Lender.

11.11    No Merger.    So long as the Obligations owed to Lender secured hereby remain unpaid and undischarged and unless Lender otherwise consents in writing, the fee, leasehold, subleasehold and sub-subleasehold estates in and to the Mortgaged Property will not merge but will always remain separate and distinct, notwithstanding the union of such estates (without implying Borrower's consent to such union) either in Borrower, Lender, any tenant or any third party by purchase or otherwise, in the event this Mortgage is originally placed on a leasehold estate and Borrower later obtains fee title to the Mortgaged Property, such fee title will be subject and subordinate to this Mortgage.

12.    **STATE-SPECIFIC PROVISIONS**.

12.1    Principles of Construction.    In the event of any inconsistencies between the terms and conditions of this Section 12 and the terms and conditions of this Mortgage, the terms and conditions of this Section 12 shall control and be binding.

12.2    Mortgage Covenants.    Borrower hereby grants to Lender the Mortgaged Property WITH MORTGAGE COVENANTS.

12.3    Statutory Condition.    This Mortgage is upon the STATUTORY CONDITION and the further condition that all covenants, agreements and obligations of Borrower contained herein or in any other instrument or statement given by Borrower to Lender in connection with the Mortgage Debt and/or the Obligations shall be kept and fully performed, for any breach of which Lender shall have the STATUTORY POWER OF SALE.    In connection therewith:

12.3.1    Lender may institute proceedings for the complete or partial foreclosure of this Mortgage by exercising the STATUTORY POWER OF SALE, as adopted under the laws of the Commonwealth of Massachusetts, which is incorporated herein by reference, in which case the Mortgaged Property may be sold for cash or upon credit in one or more parcels, at one or more sales, at such time and place, upon such terms and after such notice thereof as may be required or permitted by

law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of or estate in the Mortgaged Property. Lender may postpone sale of all or any portion of the Mortgaged Property by announcement at the time and place of sale, and, from time to time thereafter, may further postpone such sale by announcement at the time and place fixed at the preceding postponement. Lender shall deliver to the purchaser its deed or other appropriate instrument transferring title to the Mortgaged Property, or the interest therein so sold, but without any covenant or warranty, express or implied;

12.3.2   Borrower authorizes Lender at its option to foreclose this Mortgage subject to the rights of any tenants of the Mortgaged Property, and the failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be asserted by Borrower as a defense to any proceedings instituted by Lender to recover the Obligations or any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Property. Lender or any of its Affiliates may be a purchaser of the Mortgaged Property or any part thereof or of any interest therein at any sale thereof, whether pursuant to foreclosure or otherwise hereunder. Any purchaser at a foreclosure sale hereunder shall, upon any such purchase, acquire good title to the Mortgaged Property free of all rights of redemption in Borrower. So long as any amount secured hereby, or any part thereof, remains unpaid, Borrower agrees that possession of the Mortgaged Property by Borrower, or any Person claiming under Borrower, shall be as tenant under Lender, and, in case of a foreclosure of this Mortgage, Borrower and any Person in possession under Borrower shall, at the option of Lender (or such other Person as may be the owner of the Mortgaged Property following a foreclosure of this Mortgage), then become and be tenants holding over, and shall forthwith deliver possession to such purchaser, or be summarily dispossessed in accordance with the laws applicable to tenants holding over;

12.3.3   Borrower shall fully cooperate with Lender in any foreclosure of the Mortgaged Property scheduled by Lender, including without limitation; (i) providing Lender with any information concerning the Mortgaged Property reasonably requested by Lender, such as rental income information, taxes, water assessment charges and any maintenance costs associated with the Mortgaged Property; (ii) arranging with Lender two (2) preview dates, each three (3) hours in length, prior to the dates of any foreclosure sale; and (iii) granting Lender unlimited access to the Mortgaged Property on the date of the foreclosure sale for one (1) hour before and one (1) hour after the foreclosure sale. In addition, Borrower shall, under no circumstances and in no event in any way interfere with, any foreclosure sale of the Mortgaged Property scheduled by Lender; and

12.3.4   Lender shall also have the option to proceed with foreclosure in satisfaction of any installments of the Obligations which have not been paid when due, conducting the sale as herein provided and without declaring the entire principal balance and accrued interest due; such sale may be made subject to the unmatured portion of the Obligations, and any such sale shall not in any manner affect the unmatured portion of the Obligations, but as to such unmatured portion of the Obligations this Mortgage shall remain in full force and effect just as though no sale had been made hereunder. It is further agreed that several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Obligations, it being the purpose hereof to provide for a foreclosure and sale of the security for any matured portion of the Obligations without exhausting the power to foreclose and sell the Mortgaged Property for any subsequently maturing portion of the Obligations.

*[Remainder of Page Intentionally Left Blank;*
*Signature Page, Jurat & Exhibit Follow]*

**IN WITNESS WHEREOF**, Borrower has caused this Mortgage to be executed and delivered by its duly authorized signatory as an instrument under seal as of the Effective Date.

*BORROWER*:

**THG PROPERTIES LLC**

*Witness to Borrower's Signature:*

By: _____
Witness Signature
Witness Name: ~~GEORGE A. HEWETT, ESQ.~~
~~DAVIS, MALM & D'AGOSTINE, P.C.~~
~~One Boston Place~~
~~Boston, MA 02108~~

Name:  James DeRosier
Title:  Manager

THE COMMONWEALTH OF MASSACHUSETTS

_Barnstable_ , ss.

On this _21st_ day of March, 2017, before me, the undersigned notary public, personally appeared JAMES DEROSIER, in his capacity as Manager of **THG PROPERTIES LLC** who proved to me through satisfactory evidence of identification, which was ☒ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person whose name is signed on the preceding document, and who acknowledged to me that he signed it voluntarily for its stated purpose, in such capacity as Manager of **THG PROPERTIES LLC**.

*(Notarial Seal)*

Notary Public: _____
Printed Name: _George A. Hewett_
My Commission Expires: _Jan 14 2022_

SIGNATURE PAGE TO:
MORTGAGE AND SECURITY AGREEMENT
(INCLUDING ASSIGNMENT OF LEASES AND RENTS) (INTERIM)
AVIDIA BANK
THG PROPERTIES LLC

816033.1

## EXHIBIT A
### LEGAL DESCRIPTION

The land in Provincetown, Barnstable County, Massachusetts, together with the buildings thereon known as 386, 392 and 392A Commercial Street and bounded and described as follows:

**Property Address:  386 Commercial Street, Provincetown, Massachusetts 02657**

## PARCEL I

Commencing at the S.E. corner of the premises by land now or formerly of Obadiah Snow, deceased; thence running South 67°, West sixty-nine feet and three Inches (69' 3") or thereabouts to the land now or formerly of William Hedge, deceased; thence by land of said Hedge, North 22° , West sixty-two feet and six inches (62' 6"); thence North 77°, East by land now or formerly of Stephen Cook, deceased, and estate of Lydia Atkins, sixty-eight feet (68'); thence South 22°, East by land now or formerly of William H. Law, deceased, sixty-three feet and eight inches (63' 8") to the first mentioned bound, with a Four foot (4') passage way from the house to the sidewalk.

## PARCEL II

Commencing at the South West corner of the premises at a stake on the County Road on the South East side of a four foot (4') passageway; hence the line runs North Westerly sixty-four feet (64') by said pass-way to a stake at the land now or formerly of Louisa J. Lavender.  Thence turning and running North Easterly by land of said Lavender thirty-two feet and four inches (32' 4") to a post at the land now or formerly of Elizabeth Bannister Smith; thence turning and running Southeasterly by land of said Smith sixty-two feet and three inches (62' 3") to the County Road; thence turning and running South Westerly by said County Road thirty-three feet (33') + or – to the point of beginning.

## PARCEL III

Beginning at a stake on Commercial Street at the South West corner of the premises by land formerly of James Cook, and now or formerly owned by Ruth S. Conwell; thence the line runs North Westerly by land of said Conwell sixty-five feet (65') to a post at land of Louisa J. Lavender; thence turning and running North Easterly by land of said Lavender thirty-two feet and nine inches (32' 9") to a post; thence turning and running southeasterly by a four foot (4') passageway sixty-four feet (64') to the County Road, or Commercial Street, thence turning and running South Westerly by Commercial Street, thirty-two feet and nine inches (32' 9") to the first mentioned bound, with a privilege of a four foot (4') passageway on the North Easterly side from the County Road in a North Westerly direction  as far as said land extends in that direction.

For title reference see deed from Waterford Properties LLC to THG Properties LLC dated on or about the date hereof and recorded immediately prior hereto.

**BARNSTABLE REGISTRY OF DEEDS**
**John F. Meade, Register**

816033.1

Exhibit "E"

## UNLIMITED GUARANTY

TO:     Avidia Bank, a savings bank (the "Bank")

RE:    **Town Hospitality Group, Inc., a Massachusetts corporation** (the "Borrower")

To induce the Bank to make or continue to make loans, advances, or grant other financial accommodations to the Borrower, in consideration thereof and for loans, advances or financial accommodations heretofore or hereafter granted by the Bank to or for the account of the Borrower, the undersigned **THG Properties LLC** (the "Guarantor") absolutely and unconditionally guarantees the full and punctual payment to the Bank of all sums which may be presently due and owing and of all sums which shall in the future become due and owing to the Bank from the Borrower, whether direct or indirect, whether as a borrower, guarantor, surety or otherwise, including, without limitation, interest, attorneys' fees and other amounts accruing after the filing of a petition in bankruptcy by or against Borrower, notwithstanding the discharge of Borrower from such obligations, together with all costs and expenses incurred by the Bank in connection with such obligations, this Unlimited Guaranty (this "Guaranty") and the enforcement thereof, and also guarantees the due performance by the Borrower of all its obligations under all other present and future contracts and agreements with the Bank. This is a guaranty of payment and not collection.

Guarantor also agrees:

(1)    to indemnify and hold the Bank and its directors, officers, employees, agents and attorneys harmless from and against all claims, obligations, demands and liabilities, by whomsoever asserted, and against all losses in any way suffered, incurred or paid as a result of or in any way arising out of or following or consequential to transactions with the Borrower, except for any claim arising out of the gross negligence or willful misconduct of the Bank. Without limiting the generality of the foregoing, Guarantor hereby expressly waives any and all benefits or defenses which otherwise might be available to Guarantor under California Civil Code Sections 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821,2822, 2838, 2839, 2845, 2849, 2850, 2899 and 3433. Guarantor further waives all rights and defenses Guarantor may have because the obligations guaranteed hereby are secured by real property. This means, among other things that the Bank may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower and if the Bank forecloses on any real property collateral, (i) the amount of the obligations guaranteed hereby may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price and (ii) the Bank may collect from Guarantor even if the Bank, by foreclosing on the real property collateral, have destroyed any right Guarantor may have to collect from the Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the obligations guaranteed hereby are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure. Guarantor further waives all rights and defenses arising out of an election of remedies by the Bank, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise;

(2)    that this Guaranty shall not be impaired by any modification, supplement, extension, renewal or amendment of any contract or agreement to which the parties thereto may hereafter agree, nor by any modification, increase, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, nor by any agreements or arrangements whatsoever with the Borrower or anyone else, all of which may be done without notice to or consent by the Guarantor;

(3)    that the liability of the Guarantor hereunder is direct and unconditional and due immediately upon default of the Borrower without demand or notice and without requiring the Bank first to resort to any other right, remedy or security;

(4)    that Guarantor waives its rights of subrogation, reimbursement, indemnification and contribution, any right of recourse to security for the debts and obligations of the Borrower to the Bank and any other rights and defenses that are or may become available to Guarantor, including without limitation, under California Civil Code Sections 2787 to 2855, inclusive, and California Code of Civil Procedure Sections 580a, 580b, 580d, or 726, and any successor Sections; and acknowledges that such a waiver is intended by Guarantor to be effective to the maximum extent permitted by California Civil Code Section 2856 and other applicable law;

(5)    that the liability of the Guarantor is unlimited and shall be joint and several with the liabilities of any other guarantors;

(6)    that if the Borrower or the Guarantor or any other guarantor should at any time become insolvent or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by, against or in respect of the

Borrower or the Guarantor, or any other guarantor of the obligations guaranteed hereby, any and all obligations of the Guarantor shall be immediately due and payable without notice;

(7)    that the Bank's books and records showing the account between the Bank and the Borrower shall be admissible in any action or proceeding, shall be binding upon the Guarantor for the purpose of establishing the items therein set forth and shall constitute conclusive proof thereof;

(8)    that this Guaranty is, as to the Guarantor, a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided;

(9)    that this Guaranty may be terminated as to the Guarantor only by giving the Bank Sixty(60) days' prior written notice by registered or certified mail, and thereupon this Guaranty shall terminate with respect to Guarantor only at the expiration of said Sixty(60) day period, which shall then be the effective date of termination, and that such termination shall be applicable only to transactions having their inception after the effective date of termination and shall not affect rights and obligations arising out of transactions or indebtedness or extensions or renewals thereof having their inception prior to such date, including renewals, extensions, modifications and refinancings of such prior transactions, or arising out of extensions of credit made pursuant to a commitment previously made by the Bank;

(10)   that the termination or dissolution of Guarantor shall not effect the termination of this Guaranty as to Guarantor;

(11)   that termination, release or limitation of any guaranty of the obligations guaranteed hereby by any other guarantor shall not affect the continuing liability hereunder of the Guarantor;

(12)   that nothing shall discharge or satisfy the liability of the Guarantor hereunder except the full indefeasible payment and performance of all of the Borrower's debts and obligations to the Bank with interest and costs of collection;

(13)   that this Guaranty shall not be affected by the illegality, invalidity or unenforceability of the obligations guaranteed, by any fraudulent, illegal or improper act by the Borrower, the legal incapacity or any other defense of the Borrower, the Guarantor or any other person obligated to the Bank consequential to transactions with the Borrower nor by the invalidation, by operation of law or otherwise, of all or any part of the obligations guaranteed hereby, including but not limited to any interest accruable on the obligations guaranteed hereby during the pendency of any bankruptcy or receivership proceeding of the Borrower nor any mere personal disability of the Borrower though the disability be such as to make the contract void against the Borrower;

(14)   that any and all present and future debts and obligations of the Borrower to Guarantor are hereby waived and postponed in favor of and subordinated to the full indefeasible payment and performance of all present and future debts and obligations of the Borrower to the Bank;

(15)   that the Guarantor hereby grants to the Bank a continuing lien and security interest in all deposits or other sums at any time credited by or due from the Bank to the Guarantor and any property of the Guarantor at any time in the possession of the Bank whether for safekeeping or otherwise, or in transit to or from the Bank (regardless of the reason the Bank had received the same or whether the Bank has conditionally released the same) as security for the full and punctual payment and performance of all of the obligations guaranteed hereby, and such deposits and other sums may be applied or set off against such obligations at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Bank;

(16)   that if at any time payment of all or any part of the obligations guaranteed hereunder is rescinded or otherwise must be restored by the Bank to the Borrower or to the creditors of the Borrower or any representative of the Borrower or representative of the Borrower's creditors as a voidable preference or fraudulent transfer or conveyance upon the insolvency, bankruptcy or reorganization of the Borrower or the Guarantor, or to the creditors of the Guarantor or any representative of the Guarantor or representative of the creditors of Guarantor upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, this Guaranty shall continue to be effective or be reinstated, as the case may be, as though such payments had not been made, and shall survive as an obligation of the Guarantor, and shall not be discharged or satisfied by said payment or payments, notwithstanding the return of the original of this Guaranty to the Guarantor or to the Borrower, or any other apparent termination of Guarantor's obligations hereunder;

(17)   that any rights and remedies available to the Bank under this Guaranty are cumulative, and not exclusive of any rights and remedies otherwise available to the Bank at law or in equity;

(18)   that the Bank's delay or omission in exercising any of the Bank's rights and remedies shall not constitute a waiver of these rights and remedies, nor shall the Bank's waiver of any right or remedy operate as a waiver of any other right or remedy available to the Bank.  The Bank's waiver of any right or remedy on any one occasion shall not be considered a waiver of same on any subsequent occasion, nor shall this be considered to be a continuing waiver;

2

(19) that this Guaranty incorporates all discussions and negotiations between the Bank and the Guarantor concerning the guaranty and indemnification provided by the undersigned hereby, and that no such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof, there are no preconditions to the effectiveness of this Guaranty and that no provision hereof may be altered, amended, waived, canceled or modified, except by a written instrument executed, sealed and acknowledged by the Bank's duly authorized officer; and

(20) that this Guaranty and all documents which have been or may be hereinafter furnished by the Guarantor to the Bank may be reproduced by the Bank by any photographic, photostatic, microfilm, xerographic or similar process, and that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business) .

Guarantor waives: notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default and all other notices to which the Guarantor might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on suretyship defenses of every type; and any right to exoneration or marshaling. To the maximum extent permitted by law, Guarantor waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead law, including without limitation, Chapter 188, Section 1, of the General Laws of Massachusetts. To the extent that it lawfully may, Guarantor hereby further agrees not to invoke any law relating to the marshaling of collateral which might cause delay in or impede the enforcement of the Bank's rights under this Guaranty or otherwise respecting the guaranteed obligations, and to the extent that it lawfully may do so, the Guarantor hereby irrevocably waives the benefits of all such laws. Except as otherwise provided by applicable law, the Bank shall have no duty as to the collection or protection of any collateral, if any, securing the guaranteed obligations beyond the safe custody thereof.

Guarantor will from time to time execute and deliver to the Bank, and take or cause to be taken, all such other further action as the Bank may request in order to effect and confirm or vest more securely in the Bank all the rights contemplated in this Guaranty (including, without limitation, to correct clerical errors) or respecting any of the obligations guaranteed hereby or to comply with applicable statute or law.

This Guaranty shall be governed by the laws of the Commonwealth of Massachusetts, shall be binding upon the heirs, executors, administrators, successors and assigns of the Guarantor and shall inure to the benefit of the Bank's successors and assigns.

If any provision of this Guaranty is found to be invalid, illegal or unenforceable, the validity of the remainder of the Guaranty shall not be affected.

Guarantor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Massachusetts, over any suit, action or proceeding arising out of or relating to this Guaranty. Guarantor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Guarantor hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Guarantor's address shown below or as notified to the Bank and (ii) by serving the same upon the Guarantor in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Guarantor.

**GUARANTOR AND BANK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS GUARANTY, THE OBLIGATIONS GUARANTEED HEREBY, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. GUARANTOR CERTIFIES THAT NEITHER THE BANK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

Executed as an instrument under seal and dated **May 1, 2017**.

Witness:

Guarantor:

THG Properties LLC

By: _____

James D DeRosier, Manager

Address:     **386 Commercial Street**
             **Provincetown, Massachusetts**
             **02657**

## CORPORATE GUARANTY

Dated as of: October 6, 2017

In consideration of **AVIDIA BANK**, a Massachusetts-chartered savings bank having a principal place of business at 42 Main Street, Hudson, Massachusetts 01749-0190 (collectively with its successors and/or assigns, "**Lender**"), making extensions of credit and/or other banking accommodations to **KOHI COFFEE COMPANY LLC**, a Massachusetts limited liability company having a principal place of business at 199 Commercial Street, #11, Provincetown, Massachusetts 02657 (collectively with its successors and/or permitted assigns, "**Borrower**"), the undersigned,

## THG PROPERTIES LLC,

a Massachusetts limited liability company (and an Affiliate of Borrower) having a principal place of business at 386 Commercial Street, Provincetown, Massachusetts 02657 (collectively with its successors and/or permitted assigns, "**Guarantor**"), as of the date first set forth above (the "**Effective Date**"), hereby absolutely and unconditionally guarantees due payment, performance and fulfillment to Lender of any and all loans, advances, debts, liabilities, obligations, undertakings, covenants and duties of Borrower to, or in favor or for the benefit of, Lender (and/or any Affiliate of Lender) of every kind, type and description, whether consisting of obligations to pay money or to perform any obligations, whether secured or unsecured, direct or indirect, absolute, certain or contingent, sole, joint or several, primary or secondary, matured or unmatured, or due or to become due, whether held or to be held by Lender (and/or any Affiliate of Lender) for its own account or as agent for any one or more other Persons, whether now existing or hereafter arising, whether created directly or acquired by assignment or otherwise, and howsoever evidenced or acquired, including, without limitation, pursuant to the Loan Documents and/or any other present or future agreements, instruments, certificates or other documents made, executed and/or delivered to, or in favor or for the benefit of, Lender (and/or any Affiliate of Lender) by or on behalf of Borrower (collectively, the "**Obligations**").

The liability of Guarantor under this Corporate Guaranty (this "**Guaranty**") shall be UNLIMITED in amount.

Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms as set forth in a certain Loan Agreement dated as of the Effective Date by and between Borrower and Lender (as the same may be amended, restated and/or otherwise modified from time to time, the "**Loan Agreement**"). This Guaranty is issued in conjunction with the Loan for the benefit of Lender together with the other Loan Documents, and Guarantor hereby expressly acknowledges and confirms Guarantor's receipt, review and (with and upon the advice of independent and competent legal counsel of Guarantor's choosing) understanding of all such Loan Documents. Guarantor hereby represents that Guarantor (i) is an Affiliate of Borrower and each other of the Obligors; and (ii) will derive a material benefit from Lender's making and extending the Loan and any other financial accommodations to Borrower.

This Guaranty shall be continuing and absolute and shall remain in full force and effect until receipt by Lender of written notice of the revocation of this Guaranty (such notice, a "**Revocation Notice**"). Notwithstanding the existence and/or Lender's receipt of any such Revocation Notice, (i) such Revocation Notice shall not affect any obligations of Guarantor (whether hereunder or otherwise) existing at the time such Revocation Notice is received; and (ii) if, prior to Lender's receipt of any such Revocation Notice, Lender makes, extends or grants any loan, financial accommodation, credit or extension to, and/or accepts any assignment of any indebtedness of, Borrower, or takes any other action(s) in reliance upon this Guaranty, Guarantor hereby expressly agrees to (and, for the avoidance of doubt, Guarantor will) indemnify and defend Lender against, and save and hold Lender harmless from, any and

all losses, costs, charges, fees, liabilities and/or expenses which Lender may incur or suffer by reason of any such action(s) (including, without limitation, any and all Costs and Expenses of Lender's counsel).

Notice of the acceptance of this Guaranty and notices of transactions entered into in reliance hereof are hereby waived. Guarantor hereby consents to any renewal, extension and/or postponement of the time of payment of any of the Obligations, and/or to any other forbearance or indulgence with respect thereto, and hereby consents to any substitution, exchange, modification and/or release of any security for, or the release of any other Person primarily or secondarily liable on, any of the Obligations, whether or not notice thereof shall be given to Guarantor or any Affiliate(s) of Guarantor. Guarantor hereby agrees to the provisions of any instrument, security or other writing evidencing and/or securing any of the Obligations, and hereby agrees that the enforcement of this Guaranty shall not be affected by the delay, neglect or failure of Lender to take any action with respect to any security, right, obligation, endorsement, guaranty and/or other means of collecting the Obligations which Lender may at any time(s) hold (including, without limitation, in connection with (directly or indirectly) any perfection and/or enforcement thereof, and/or any change whatsoever with respect to Borrower in its organization or in the form or manner of doing business, whether by incorporation, consolidation, merger, partnership formation or change in membership and/or other stock, equity and/or economic interest ownership and/or rights (as the context permits), or otherwise), it being hereby agreed by Guarantor that Guarantor shall at all times be and remain bound upon this Guaranty irrespective of any action, delay or omission by Lender in dealing with Borrower, any of the Obligations, any collateral or security therefor or any Person at any time(s) liable with respect to, or otherwise directly or indirectly in connection with, all or any part of the Obligations.

The liability of Guarantor hereunder shall be effective immediately and Guarantor hereby expressly waives all requirements of notice, demand, presentment or protest and any right which Guarantor might otherwise have to require Lender first to proceed against Borrower, any other guarantor of any of the Obligations (whether now or hereafter existing) and/or any other Person, or first to realize on any security or collateral held by Lender before proceeding against Guarantor for the enforcement of this Guaranty. Guarantor shall not assert (and Guarantor hereby agrees not to assert) any right arising from payment or other performance hereunder, whether by set-off or otherwise, until (i) Guarantor's liability hereunder shall have been discharged in full, and (ii) all of the Obligations shall have been paid and performed, and indefeasibly satisfied and discharged, in full.

The obligations of Guarantor to make payment in accordance with the terms of this Guaranty shall not be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release and/or limitation of the liability of Borrower (and/or any Affiliate thereof) or its estate in bankruptcy or reorganization resulting from the operation of any present or future provision of the Bankruptcy Code or other statute or from the decision of any court or other Governmental Authority. The liability of Guarantor hereunder shall be reinstated and revived, and the rights of the holder or holders of any Obligations or Loan Documents shall continue, with respect to any amount at any time paid on account of any Obligations or hereunder or under any other of the Loan Documents, which shall thereafter be required to be restored or returned by the holder or holders of any Obligations or Loan Documents upon the bankruptcy, insolvency or reorganization of Borrower (and/or any Affiliate thereof), or for any other reason, all as though such amount had not been paid.

Guarantor hereby guarantees to Lender the prompt payment of any and all of Lender's expenses and costs, including, without limitation, the reasonable fees and expenses of Lender's counsel, in connection with the preparation, administration, amendment, modification or enforcement of this Guaranty and/or any other of the Loan Documents, including, without limitation, (i) any proceeding brought, or threatened, to enforce payment of all or any part of the Obligations, and (ii) all expenses paid and/or incurred by Lender (including reasonable attorneys' fees) in connection with the collection of all sums and Obligations guaranteed hereunder, irrespective of whether such collection be from Borrower,

any other guarantor(s) (whether now or hereafter existing) of the Obligations or from Guarantor.

Guarantor hereby covenants and agrees with Lender that, for so long as any Obligations are outstanding, and except as expressly permitted in the Loan Documents or in a writing signed by an officer of Lender, Guarantor shall

In the event Guarantor fails to comply (beyond the expiration of any applicable notice, grace or cure period) with any of the covenants, agreements and/or obligations hereunder, such failure shall constitute (i) an "**Event of Default**" hereunder, and (ii) a "default" and/or "Event of Default" (howsoever such terms may be used and/or defined) under all other of the Loan Documents, irrespective of whether any such other Loan Documents explicitly so state. This Guaranty and all other of the Loan Documents are cross-defaulting instruments.

If for any reason Borrower has no legal existence and/or is under no legal obligation to discharge the Obligations, or any part thereof, or if any amounts included in the Obligations shall have become irrecoverable from Borrower by operation of law or for any other reason, or if any security or collateral for, or other guaranty of, the Obligations shall be found invalid, Guarantor shall nonetheless be and at all times remain bound upon this Guaranty, and Guarantor hereby expressly acknowledges, agrees and consents to the same.

Any deposits or other sums at any time credited by or due from Lender to Guarantor, and any securities or other property or assets of Guarantor at any time held by Lender may, at all times be held and treated as security for all obligations of Guarantor hereunder (and/or under any other of the Loan Documents to which Guarantor is a party) and for all of the Obligations, and Guarantor hereby pledges and grants a security interest in the same to Lender. Regardless of the adequacy of any such security, Lender may apply or set-off such deposits or other sums against such obligations (including, without limitation, the Obligations) at any time or time(s) in Lender's sole discretion without the further consent of Guarantor, and Guarantor hereby expressly acknowledges, agrees and consents to the foregoing.

Any Indebtedness of Borrower, whether direct or indirect, now or hereafter held by Guarantor is hereby expressly subordinated to the payment and performance, and indefeasible satisfaction and discharge, in full, of the Obligations. Guarantor hereby collaterally assigns any such Indebtedness to Lender as additional security for this Guaranty and the Obligations. If Lender so requests, Guarantor shall collect, enforce, receive and immediately pay over any such Indebtedness to Lender as trustee for Lender; *provided, however,* that any such payment(s) to Lender shall neither reduce nor affect in any manner the liability of Guarantor under the other provisions of this Guaranty and/or any other of the Loan Documents to which Guarantor is a party. Guarantor hereby acknowledges and agrees that any promissory notes and/or other instruments or documents now or hereafter evidencing any such Indebtedness shall be (and Guarantor hereby expressly agrees to cause the same to be) marked with a legend indicating that the same are subject to this Guaranty and, if Lender so requests in Lender's sole discretion, Guarantor shall (and hereby agrees to) deliver the same to Lender. Guarantor will, and Guarantor hereby authorizes Lender in the name of Guarantor to, from time to time, execute and file financing statements and continuation statements and other instruments of lien, and execute such other documents and take such other action, as Lender deems necessary or appropriate in Lender's sole but reasonable discretion to perfect, preserve and enforce Lender's interests, liens and cumulative rights and remedies hereunder and/or under any other of the Loan Documents.

Guarantor hereby represents and warrants to Lender and its Affiliates as follows:

(i)      Guarantor is duly formed and validly existing, and is in good standing, under the laws of its jurisdiction of organization;

(ii)     Guarantor has full corporate power, authority and capacity to enter into and perform its obligations hereunder and under all other of the Loan Documents to which Guarantor is a party;

(iii)    all necessary action has been taken by Guarantor's officers, directors and shareholders, to authorize the execution and delivery of this Guaranty, all other of the Loan Documents to which Guarantor is a party, and the payment and performance of its obligations hereunder and thereunder;

(iv)    to the extent required by applicable law, Guarantor has given notice to its officers, directors and shareholders of this Guaranty and of all other of the Loan Documents to which Guarantor is a party and/or to which Guarantor or its assets are otherwise bound;

(v)     there are no provisions contained in any agreement, contract, instrument or other document to which Guarantor is a party that restrict or limit Guarantor's power or authority to enter into and perform its obligations hereunder or under any other of the Loan Documents to which Guarantor is a party and/or to which Guarantor or its assets are otherwise bound;

(vi)    neither the execution and delivery of this Guaranty or any other of the Loan Documents to which Guarantor is a party, nor compliance with the terms, provisions and conditions hereof or thereof, will conflict with, result in a breach of, or constitute a default under Guarantor's charter (or other organizational) documents or Guarantor's by-laws; and

(vii)   neither the execution and delivery of this Guaranty or any other of the Loan Documents to which Guarantor is a party, nor compliance with the provisions hereof or thereof, conflicts with, results in a breach of, or constitutes a default under, any agreement or instrument to which Guarantor is a party or by which Guarantor or any of Guarantor's property or assets is otherwise bound or affected, and does not require the consent or approval of any other Person (other than any such consents which have been heretofore obtained in writing and provided to Lender, or are otherwise expressly set forth in the Loan Documents).

Guarantor hereby expressly acknowledges and agrees that any and all representations and warranties made in any of the Loan Documents and pertaining to Guarantor (i) are hereby incorporated, *mutatis mutandis*, by this reference into this Guaranty; (ii) shall be deemed made by Guarantor in this Guaranty as if set expressly forth herein in full; and (iii) are, in all respects, true, correct and complete as they pertain to Guarantor.  Furthermore, Guarantor hereby expressly acknowledges and agrees that any and all covenants set forth in any of the Loan Documents which pertain to Guarantor, but which may not be expressly set forth herein (including, without limitation, any covenants directly or indirectly in connection with (a) the delivery of any financial statements, tax returns and/or other information; and/or (b) any Equity Interests), are hereby incorporated, *mutatis mutandis*, by this reference in this Guaranty, and shall be deemed made by Guarantor in this Guaranty as if set forth herein in full, and Guarantor hereby expressly agrees to be bound by any and all of such covenants and to perform Guarantor's obligations hereunder and thereunder.  In addition to the rights of Lender to require payment of this Guaranty as set forth herein, upon the occurrence and continuance of default and/or Event of Default (howsoever such terms may be used and/or defined) hereunder and/or under any other of the Loan Documents, Lender shall have the right to demand immediate payment under this Guaranty.

This Guaranty and the obligations arising hereunder shall at all times be governed by, and construed in accordance with, the laws of The Commonwealth of Massachusetts ("**Massachusetts**"), excluding any conflicts of law rule or principle which might refer such construction to the laws of another state, commonwealth, country and/or jurisdiction.  Guarantor hereby knowingly, intentionally and voluntarily: (i) consents and submits to non-exclusive jurisdiction in Massachusetts over any suit, action or proceeding by any Person arising from or relating to the Obligations, this Guaranty or any other of the Loan Documents; (ii) agrees that any such action, suit or proceeding may be brought in any state or

federal court of competent jurisdiction sitting in Worcester County in the State, and, to the fullest extent permitted by applicable law, further agrees that it will not bring any action, suit or proceeding in any other forum (but nothing herein shall affect the right of Lender to bring any action, suit or proceeding in any other forum); (iii) waives any objection that it may now or hereafter have to the venue of any such suit or any such court or that such suit is brought in an inconvenient court; and (iv) consents to service of process in any such suit being made upon Borrower by mail at the address specified for Guarantor in the introductory paragraph to this Guaranty (unless Guarantor has by five (5) days' prior written notice to Lender specified another address)

This Guaranty is intended to take effect as a sealed instrument, shall inure to the benefit of Lender and Lender's successors and assigns and shall be binding upon Guarantor and the heirs, legal representatives, successors and permitted assigns of Guarantor (as the context so permits). No provision of this Guaranty may be amended or waived except in writing signed by an officer of Lender. If this Guaranty is executed by two (2) or more Persons, or if there is more than one (1) Guarantor, they shall be severally liable hereunder, and the word "Guarantor" wherever used herein shall be construed to refer to each of such Persons separately, all in the same manner and with the same effect as if each of them had signed separate instruments; and, in such case any Revocation Notice with respect to this Guaranty, or of the death, incapacity, liquidation and/or dissolution (as applicable) of any Guarantor, shall be effective only with respect to the Person by whom or for whom such Revocation Notice is given. All personal pronouns used herein, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural and vice versa. Titles of articles and sections, if any, are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provisions hereof. The term "Lender" shall mean and include the holder or holders of all or any part of the Obligations and/or the Loan Documents at the time in question. As used in this Guaranty, the term "**and/or**" shall mean one or the other or both, or any one or more or all, of the things or Person(s) in connection with which the conjunction is used.

All notices, demand, communications, requests, consents and the like shall be made, received and delivered in accordance with the Security Agreement.

**GUARANTOR, IRREVOCABLY AND VOLUNTARILY HEREBY WAIVES GUARANTOR'S RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY LENDER, BORROWER, GUARANTOR, ANY OTHER GUARANTOR AND/OR ANY OF THE HEIRS, LEGAL REPRESENTATIVES, AFFILIATES, SUCCESSORS AND/OR PERMITTED ASSIGNS (AS THE CONTEXT SO PERMITS) OF ANY OF THE FOREGOING, WHICH RELATES DIRECTLY OR INDIRECTLY TO THIS GUARANTY, THE OBLIGATIONS OR THE RELATIONSHIP BY AND AMONG LENDER, BORROWER, GUARANTOR, ANY OTHER GUARANTOR OR ANY OR ALL OF THEM.**

Guarantor hereby agrees not to exercise or enforce any right of exoneration, contribution, reimbursement, recourse or subrogation available to Guarantor against Borrower or any other guarantor (whether now or hereafter existing) of all or any part the Obligations, or as to any security or collateral therefor, unless and until the Obligations have been paid and performed, and discharged and indefeasibly satisfied, in full. Guarantor hereby acknowledges and agrees that (i) this Guaranty evidences an obligation of a commercial nature, and not an obligation of a consumer, family, agricultural or household nature; and (ii) this Guaranty is in addition, and without prejudice, to any security (including any guarantees provided by any other Person to Lender) now or hereafter held by Lender in respect of the Obligations, and/or any other rights or remedies which Lender might have hereunder or otherwise.

This Guaranty may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument. The

undersigned hereby expressly acknowledges and agrees that (i) this instrument may be reproduced by Lender by photographic, computer imaging or similar process, and Lender may destroy the original from which this instrument was so reproduced; (ii) any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business) and any enlargement, facsimile or further reproduction shall likewise be admissible in evidence; and (iii) any signature of the undersigned upon this instrument which is generated or transmitted electronically or as a facsimile or as a scanned document or image (including, without limitation, in any ".pdf", ".jpg", ".tiff" or any other electronic or digital format) shall be deemed a valid and binding signature of such signatory with the same effect as if a manually signed original signature of such signatory.

*[Remainder of Page Intentionally Left Blank;*
*Signature Page Follows]*

**IN WITNESS WHEREOF**, Guarantor has caused its duly authorized signatory to execute this Guaranty as an instrument under seal as of the Effective Date.

*GUARANTOR*:

**THG PROPERTIES LLC**

*Witness to Guarantor's Signature:*

Witness Signature

Witness Name: RYAN CAMPBELL

By:
Name:   James D. DeRosier
Title:   Manager

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| IN RE: | ) | |
| | ) | CHAPTER 11 |
| THG PROPERTIES LLC | ) | CASE NO. 20-10644-FJB |
| Debtor. | ) | |
| _____ | ) | |

## ORDER GRANTING AVIDIA BANK
## RELIEF FROM STAY

This matter has come before the Court, and after full consideration, and no objections

been filed after proper notice, it is hereby ordered that Avidia Bank ("Avidia"), its

successors and/or assigns, or current holder, Motion for Relief from Automatic Stay is

hereby granted and it may proceed to foreclose or accept a deed in lieu of foreclosure

of the mortgage given by THG Properties LLC to Avidia Bank, dated March 31, 2017,

and recorded at the Barnstable County Registry of Deeds, at Book 30390, Page 286,

which covers the premises  located at 386 Commercial Street, Provincetown,

Barnstable County, Massachusetts, and  the mortgage given by THG Properties LLC to

Avidia Bank, dated March 31, 2017, and recorded at the Barnstable County Registry of

Deeds, at Book 30390, Page 329, which covers the premises  located at 386

Commercial Street, Provincetown, Barnstable County, Massachusetts, and may

exercise its rights under said Mortgages, including preserving its right to seek any

deficiency to the extent permitted by state and federal law, including 11 U.S.C. §524(a),

and may bring such actions, including, without limitation, summary process

proceedings, as are permissible by law, all as set forth in its Motion.

The applicable provisions of Federal Rules of Bankruptcy Procedure 4001

(a)(3) are hereby waived.

_____
Honorable Frank J. Bailey
United States Bankruptcy Judge